NO. 13-2502

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

AMERICAN HUMANIST ASSOCIATION; JOHN DOE, as parents and next friends of their minor child; JANE DOE, as parents and friends of their minor child; JILL DOE,

*Plaintiffs - Appellants,*

*v.*

GREENVILLE COUNTY SCHOOL DISTRICT,

*Defendant - Appellee,*

*and,*

JENNIFER GIBSON, in her individual capacity; BURKE ROYSTER, in his individual capacity,

*Defendants.*

————————————————

On Appeal from the United States District Court for the District of South Carolina

————————————————

## BRIEF OF THE APPELLANT
————————————————

Aaron Joel Kozloski
Capitol Counsel, LLC
P.O. Box 1996, Lexington, SC 29071
803-465-1400, Fax: 888-513-6021
Email: aaron@capitolcounsel.us

Monica Lynn Miller
American Humanist Association
1777 T Street NW, Washington, DC 20009
202-238-9088, Fax: 202-238-9003
Email: mmiller@americanhumanist.org

*Attorneys for Appellants*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Fed. R. App. P. 26.1 and Local Rule 26.1, the American Humanist Association is a nonprofit corporation and makes the following disclosure statement:

1. Is party or amicus a publicly held corporation or other publicly held entity? No.

2. Does party/amicus have any parent corporations? No.

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? No

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? No

5. Is party a trade association? No

6. Does this case arise out of a bankruptcy proceeding? No

    s/ Monica Lynn Miller

 American Humanist Association

January 27, 2014

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...................................................... i

TABLE OF CONTENTS ...................................................... ii

TABLE OF AUTHORITIES ...................................................... iv

JURISDICTIONAL STATEMENT ...................................................... 1

STATEMENT OF THE ISSUES ...................................................... 1

STATEMENT OF THE CASE AND RELEVANT FACTS ............................. 2

SUMMARY OF THE ARGUMENT ...................................................... 11

ARGUMENT ...................................................... 14

I. THE DISTRICT COURT ERRED IN DENYING THE PRELIMINARY
INJUNCTION MOTION ...................................................... 14

A. Standard of Review ...................................................... 14

B. The Plaintiffs will continue to suffer irreparable harm ................................... 15

C. An injunction will not harm the Defendants ...................................................... 18

D. Upholding constitutional rights is always in the public interest ...................... 18

E. The Plaintiffs are likely to succeed on the merits ........................................... 19

II. MVES GRADUATION PRAYERS VIOLATE THE
ESTABLISHMENT CLAUSE ...................................................... 20

A. Student-led prayers at MVES graduations are government speech .............. 24

B. The Prayer Policy fails the *Lemon* test ...................................................... 26

1. The Prayer Policy lacks a secular purpose ...................................................... 26

2. The Prayer Policy unconstitutionally endorses religion ................................... 28

3. The Prayer Policy causes excessive entanglement with religion ................... 36

C. The Prayer Policy fails the coercion test ................................................ 37

D. The new Prayer Policy is unconstitutional ............................................ 40

III. HOLDING ELEMENTARY SCHOOL GRADUATIONS IN A
CHRISTIAN CHAPEL WITHIN A BAPTIST UNIVERSITY VIOLATES
THE ESTABLISHMENT CLAUSE ...................................................... 46

A. The Chapel Policy fails the coercion test ............................................ 46

B. The Chapel Policy fails the *Lemon* test .............................................. 48

1. The Chapel Policy lacks a secular purpose ........................................ 48

2. The Chapel Policy unconstitutionally endorses religion .................... 49

3. The Chapel Policy causes excessive entanglement with religion ................... 51

IV. THE DISTRICT COURT ERRED IN DENYING THE DOES'
MOTION TO PROCEED ANONYMOUSLY ...................................... 52

A. Standard of Review ........................................................................ 52

B. Each factor for filing anonymously weighs in the Does' favor ...................... 54

CONCLUSION ................................................................................ 56

REQUEST FOR ORAL ARGUMENT ................................................ 57

CERTIFICATE OF COMPLIANCE ................................................ 58

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*A.M. v. Taconic Hills Cent. Sch. Dist.*, 510 Fed. Appx. 3 (2d Cir. 2013) ............... 25

*ACLU v. Black Horse Pike Regional Bd. of Educ.*, 84 F.3d 1471 (3d Cir. 1996) ................................................................................................ passim

*ACLU v. City of St. Charles*, 794 F.2d 265 (7th Cir. 1986) .................................... 16

*Adler v. Duval County Sch. Bd.*, 250 F.3d 1330 (11th Cir. 2001) .................... 35, 45

*Appenheimer v. Sch. Bd.*, 2001 WL 1885834 (C.D. Ill. 2001) ........................ passim

*Ashby v. Isle of Wight County Sch. Bd.*, 354 F. Supp. 2d 616 (E.D. Va. 2004) .......... ................................................................................................ 22, 25, 34

*Bell v. Little Axe Independent School Dist. No. 70*, 766 F.2d 1391 (10th Cir. 1985). ................................................................................................ 42

*Bennett v. Livermore Unified Sch. Dist.*, 193 Cal. App. 3d 1012 (1st Dist. 1987) ..... ................................................................................................ 23, 27, 34

*Borden v. Sch. Dist.*, 523 F.3d 153 (3rd Cir. 2008). ........................................ 18, 23

*Briggs v. Dalkon Shield*, 174 F.R.D. 369 (D. Md. 1997) ......................................... 9

*Brody v. Spang*, 957 F.2d 1108 (3d Cir. 1992) ..................................................... 25

*Carlino v. Gloucester City High Sch.*, 57 F. Supp. 2d 1 (D.N.J. 1999) ................. 22

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006) ..... ................................................................................................ 15

*Chaudhuri v. Tennessee*, 130 F.3d 232 (6th Cir. 1997) .......................................... 35

*Child Evangelism Fellowship v. Montgomery County Pub. Schs*, 373 F.3d 589 (4th Cir. 2004) ................................................................................... 24

*Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092 (9th Cir. 2000) ......... passim

*Coles v. Cleveland Bd. of Educ.*, 171 F.3d 369 (6th Cir. 1999) ............................. 36

*Collins v. Chandler Unified Sch. Dist.*, 644 F.2d 759 (9th Cir. 1981)............passim

*Committee for Voluntary Prayer v. Wimberly*, 704 A.2d 1199 (D.C. 1997) ...passim

*Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219 (10th Cir. 2009) .............
...........................................................................................................22, 24, 45

*County of Allegheny v. ACLU*, 492 U.S. 573 (1989) ...........................19, 20, 28, 50

*Deveney v. Bd. of Educ. of Cnty. of Kanawha*, 231 F. Supp. 2d 483 (S.D. W.VA.
2002)...................................................................................................passim

*Doe v. Aldine Indep. Sch. Dist.*, 563 F. Supp. 883 (S.D. Tex. 1982)...............23, 56

*Doe v. Barrow County*, 219 F.R.D. 189 (N.D. Ga. 2003).......................................56

*Doe v. Duncanville Indep. Sch. Dist.*, 70 F.3d 402 (5th Cir 1995) ..................21, 23

*Doe v. Duncanville Indep. Sch. Dist.*, 994 F.2d 160 (5th Cir. 1993) ....15, 20, 23, 55

*Doe v. Elmbrook Sch. Dist.*, 687 F.3d 840 (7th Cir. 2012)..............................passim

*Doe v. Gossage*, 2006 U.S. Dist. LEXIS 34613 (W.D. Ky. 2006) ..................passim

*Doe v. Harlan County School Dist.*, 96 F. Supp. 2d 667 (E.D. Ky. 2000) .............56

*Doe v. Porter*, 370 F.3d 558 (6th Cir. 2004).....................................................54, 55

*Doe v. S. Iron R-1 Sch. Dist.*, 453 F. Supp. 2d 1093 (E.D. Mo. 2006) ...................55

*Doe v. Santa Fe Indep. Sch. Dist.*, 168 F.3d 806 (5th Cir. 1999) ...................passim

*Doe v. Sch. Bd.*, 274 F.3d 289 (5th Cir. 2001)..................................................23, 55

*Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981) ...............................................54, 55, 56

*Doe v. Wilson Cty. Sch.*, 564 F. Supp. 2d 766 (M.D. Tenn. 2008)..................23, 55

*Does 1-7 v. Round Rock Indep. Sch. Dist.*, 540 F. Supp. 2d 735 (W.D. Tex. 2007).
.......................................................................................................................35

*Does v. Enfield Pub. Schools*, 716 F. Supp. 2d 172 (D. Conn. 2010)..............passim

*Elrod v. Burns*, 427 U.S. 347 (1976). ....................................................................15

*Engel v. Vitale*, 370 U.S. 421 (1962) ...................................................... 20

*Everson v. Bd. of Educ.,* 330 U.S. 1 (1947). .......................................... 47

*Fleming v. Jefferson County Sch. Dist. R-1*, 298 F.3d 918 (10th Cir. 2002). ......... 14

*Gearon v. Loudoun County Sch. Bd.*, 844 F. Supp. 1097 (E.D. Va. 1993)......passim

*Golden v. Rossford Exempted Vill. Sch. Dist.*, 445 F. Supp. 2d 820 (N.D. Ohio 2006)............................................................................................. 23, 25

*Graham v. Central Cmty. Sch. Dist.*, 608 F. Supp. 531 (S.D. Iowa 1985) ................ .......................................................................................... 23, 27, 29, 34

*Greater Houston Chapter of ACLU v. Eckels*, 589 F. Supp. 222 (S.D. Tex. 1984) ... .................................................................................................. 48

*Hall v. Board of School Comm'rs*, 656 F.2d 999 (5th Cir. 1981).......................... 41

*Hall v. Bradshaw*, 630 F.2d 1018 (4th Cir. 1980) .........................................passim

*Harris v. Joint School Dist. No. 241*, 41 F.3d 447 (9th Cir. 1994)................passim

*Herdahl v. Pontotoc County Sch. Dist.*, 933 F. Supp. 582 (N.D. Miss. 1996) .......... ........................................................................................ 20, 26, 33, 37

*Holloman v. Harland,* 370 F.3d 1252 (11th Cir. 2004) .......................21, 26, 29, 33

*Hunter v. Atchison, T. & S. F. Ry. Co.*, 188 F.2d 294 (7th Cir. 1951)..................... 9

*In re Patriot's Point Assocs.*, 1990 U.S. App. LEXIS 26964 (4th Cir. 1990) .......... 9

*Ingebretsen v. Jackson Pub. Sch. Dist.*, 864 F. Supp. 1473 (S.D. Miss. 1994) ......25

*Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274 (5th Cir. 1996) ..............passim

*Interplay Ent't Corp. v. Topware Interactive, Inc.*, 751 F. Supp. 2d 1132 (C.D. Cal. 2010)........................................................................................... 16

*Jaffree v. Wallace*, 705 F.2d 1526 (11th Cir. 1983).......................................... 26

*Jager v. Douglas County Sch. Dist.*, 862 F.2d 824 (11th Cir. 1989) ..............passim

*James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993)........................................52, 53, 56

*Jones v. Clear Creek Indep. Sch. Dist.*, 977 F.2d 963 (5th Cir. 1992) .................35

*K–2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087 (9th Cir. 1972) ...................................9

*Karen B. v. Treen*, 653 F.2d 897 (5th Cir. 1981) ...........................................passim

*Larkin v. Grendel's Den*, 459 U.S. 116 (1982).........................................................48

*Lassonde v. Pleasanton Unified Sch. Dist.*, 320 F.3d 979 (9th Cir. 2003) ......passim

*Lee v. Weisman*, 505 U.S. 577 (1992)............................................................passim

*Lemke v. Black*, 376 F. Supp. 87 (E.D. Wis. 1974) ...................................46, 47, 52

*Lemon v. Kurtzman*, 403 U.S. 602 (1971). ......................................................passim

*Lockwood v. Wolf Corp.,* 629 F.2d 603 (9th Cir. 1980)...........................................9

*Lundberg v. W. Monona Cmty. Sch. Dist.*, 731 F. Supp. 331 (N.D. Iowa 1989)
........................................................................................................................passim

*Mangold v. Albert Gallatin Area Sch. Dist.*, 438 F.2d 1194 (3rd Cir. 1971)..........23

*McCormack v. Hiedeman*, 694 F.3d 1004 (9th Cir. 2012)........................................9

*McCreary County v. ACLU*, 545 U.S. 844 (2005)..................................................26

*Mellen v. Bunting*, 327 F.3d 355 (4th Cir. 2003)..............................................passim

*Meltzer v. Bd. of Pub. Instruction,* 548 F.2d 559 (5th Cir. 1977) .........................23

*Morgan v. Swanson*, 659 F.3d 359 (5th Cir. 2011)................................................35

*Moss v. Spartanburg County Sch. Dist. Seven*, 683 F.3d 599 (4th Cir. 2012)...........
..................................................................................................................17, 42

*Musgrove v. Sch. Bd.*, 608 F. Supp. 2d 1303 (M.D. Fla. 2005) .............................46

*Newsom v. Albemarle County Sch. Bd.*, 354 F. 3d 249 (4th Cir. 2003)............15, 18

*North Carolina Civil Liberties Union v. Constangy*, 947 F.2d 1145 (4th Cir. 1991)
............................................................................................27, 36, 37, 52

*Nurre v. Whitehead*, 580 F.3d 1087 (9th Cir. 2009) ...............................................22

*Parents' Assoc. of P.S. 16 v. Quinones*, 803 F.2d 1235 (2nd Cir. 1986)...............16

*Parke, Davis & Co. v. Amalgamated Health & Drug Plan, Inc.*, 205 F. Supp. 597 (S.D. N.Y. 1962)...................................................................................9

*Peck v. Upshur County Bd. of Educ.*, 155 F.3d 274 (4th Cir. 1998)................35, 45

*S.D. v. St. Johns County Sch. Dist.,* 632 F. Supp. 2d 1085 (M.D. Fla. 2009)............ .....................................................................................................16, 23, 25

*Sands v. Morongo Unified Sch. Dist.*, 53 Cal. 3d 863  (Cal. 1991) ......23, 29, 34, 37

*Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290 (2000).................................passim

*Sch. Dist. Abington v. Schempp*, 374 U.S. 203 (1963).........................20, 28, 34, 42

*Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1 (1st Cir. 2012) ........................................................................................................................16

*Skarin v. Woodbine Cmty. Sch.,* 204 F. Supp. 2d 1195 (S.D. Iowa 2002).......passim

*Spacco v. Bridgewater Sch. Dep't*, 722 F. Supp. 834 (D. Mass. 1989).................46

*Steele v. Van Buren Public School Dist.*, 845 F.2d 1492 (8th Cir. 1988)..............41

*Stone v. Graham*, 449 U.S. 39 (1980).....................................................................20

*Tanford v. Brand*, 104 F.3d 982 (7th Cir. 1997)....................................................35

*United States v. W.T. Grant Co.,* 345 U.S. 629 (1953)..........................................41

*Virginia Carolina Tools, Inc. v. Int'l Tool Supply, Inc*., 984 F.2d 113 (4th Cir. 1993)............................................................................................................14

*Wallace v. Jaffree*, 472 U.S. 38 (1985)..................................................................20

*Walz v. Egg Harbor Twp. Bd. of Educ*., 342 F.3d 271 (3d Cir. 2003)...................35

*Warnock v. Archer*, 443 F.3d 954 (8th Cir. 2006) .................................................22

*Washegesic v. Bloomingdale Pub. Sch*., 33 F.3d 679 (6th Cir. 1994) ...................42

*Williams v. Griffin*, 952 F.2d 820 (4th Cir. 1991)....................................................9

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008). ...............................15

viii

*Workman v. Greenwood Cmty. Sch. Corp.*, 2010 U.S. Dist. LEXIS 42813 (S.D. Ind. 2010)..................................................................................passim

*WV Ass'n of Club Owners & Fraternal Servs. v. Musgrave*, 553 F.3d 292 (4th Cir. 2009). ....................................................................................14, 16

*Yacovelli v. Moeser*, 2004 U.S. Dist. LEXIS 9152 (M.D.N.C. 2004) ...................55

**Statutes**

28 U.S.C.A. § 1291 ...........................................................................................1

28 U.S.C. § 1292(a)(1) .....................................................................................1

28 U.S.C. § 1331 ...............................................................................................1

28 U.S.C. § 1343 ...............................................................................................1

42 U.S.C. § 1983 ...........................................................................................1, 2

**Other Authorities**

11 C. Wright & A. Miller, Federal Practice & Procedure, § 2949 ..........................9

**Rules**

Fed. R. App. P. 3(a)(1)....................................................................................1

Fed. R. App. P. 4(a)(1)(A) ...............................................................................1

Fed. R. Evid. 201(b) .....................................................................................5, 6

Fed. R. Evid. 801(d)(2)....................................................................................9

**Constitutional Provisions**

U.S. Const. amend. I.................................................................................passim

## JURISDICTIONAL STATEMENT

The American Humanist Association ("AHA"), Jane, Jill and John Doe (the "Plaintiffs") appeal the District Court's denial of their: (1) motion for preliminary injunction to enjoin the Greenville County School District ("School District") from staging Christian-themed elementary school graduation ceremonies; and (2) motion to permit the Does to proceed anonymously to protect their safety and privacy. The District Court entered an order on December 3, 2013, without a written opinion. (Joint Appendix ["J.A."] 183). On December 12, pursuant to Fed. R. App. P. 3(a)(1) and 4(a)(1)(A), the Plaintiffs timely filed their Notice of Appeal. (J.A.207).

This Court has jurisdiction over the Plaintiffs' appeal pursuant to 28 U.S.C. § 1292(a)(1) and 28 U.S.C.A. § 1291, respectively. The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 because the claims arise under the Constitution and 28 U.S.C. § 1343 because this action involves claims brought under 42 U.S.C. § 1983.

## STATEMENT OF THE ISSUES

This case presents two pure questions of law:

(1) Whether the District Court erred in denying a motion for a preliminary injunction to enjoin a School District from including official prayers in its

1

graduation ceremonies for elementary students and from holding the ceremonies in a Christian chapel.

(2) Whether the District Court erred in denying a young student and her parents the ability to proceed anonymously.

## STATEMENT OF THE CASE AND RELEVANT FACTS

To vindicate their rights under the Establishment Clause, U.S. CONST. amend. I, the Plaintiffs filed a Verified Complaint on September 11, 2013, against the School District, Burke Royster and Jennifer Gibson ("Defendants") seeking declaratory and injunctive relief and damages pursuant to 42 U.S.C. § 1983. (J.A.4-28).[1] The Plaintiffs challenge the constitutionality of the Defendants' policy and practice of including prayers at elementary school graduations (the "Prayer Policy") and their policy and practice of holding the ceremonies in a Christian Chapel on the campus of a Christian university (the "Chapel Policy," and together, the "Graduation Policies"). Jane and John Doe are the parents of Jill Doe, a fifth grade student at Mountain View Elementary School ("MVES"), a School District school, during the 2012-2013 school year, and two other children currently attending MVES, including one in the fourth grade. (J.A.5-7¶¶6-10, J.A.170¶1). The Does are humanists and members of AHA (J.A.6¶¶8-9), a national nonprofit

---

[1] The Plaintiffs have since voluntarily dismissed the individual-named defendants. (J.A.3 Dkt.30).

membership organization that advocates progressive values and equality for humanists, atheists and freethinkers, also a Plaintiff in this action. (J.A.5¶5).

The following evidence is undisputed. MVES has a policy, practice and custom of including prayers as part of its formal fifth grade graduation ceremonies. (J.A.4¶1, J.A.9-12¶¶38-63, J.A.148¶¶38-39, J.A.148-49¶¶41-63, J.A.19, J.A.100¶17). Since May 2012, MVES has also been holding its ceremonies in a Christian venue, the Turner Chapel, on the campus of North Greenville University ("NGU"), a Christian school affiliated with the Southern Baptist Convention. (J.A.4¶1, J.A.7-8¶¶14-23, J.A.146-47¶¶14-23, J.A.98¶¶4-8). The ceremony is held in the morning during the school day. (J.A.97¶3). The children are driven from MVES to the Turner Chapel in a school bus under the supervision of faculty and return to MVES after the ceremony. (J.A.113-117).

In accord with these policies, MVES held its graduation in the Turner Chapel on May 30, 2013, and included two prayers in the ceremony. (J.A.8¶¶24-25, J.A.9-10¶¶38-49, J.A.147¶¶24-25, J.A.148¶¶38-39, J.A.148-49¶¶41-49). Both were Christian prayers referring to "Jesus," and both were reviewed and approved by a school employee prior to the ceremony. (J.A.10¶¶41-48, J.A.10-11¶¶52-54, J.A.148-49¶¶41-48, J.A.149¶¶52-54).[2]

---

[2] The "Closing Prayer" consisted of the following: "Thank you for coming. Let us pray. Dear Lord, thank you for this day and all your many blessings upon us. Lord, bless each and every one of our teachers, leaders and parents. Lead, guide and

The Prayer Policy

It has been the School District's policy and practice to have school officials select student speakers to write, and then deliver, prayers at MVES graduations. (J.A.10¶¶43-46, J.A.10¶52, J.A.148-49¶¶43-46, J.A.149¶52). Not only does the school ask students to compose and deliver prayers, but it also reviews and approves the content of the prayers prior to their delivery. (J.A.11¶¶53-54, J.A.149¶¶53-54). The first prayer is offered after opening remarks by the principal and the second is delivered at the ceremony's conclusion. (J.A.10¶42, J.A.10¶45, J.A.19, J.A.148¶42, J.A.149¶45). MVES has sponsored and approved explicitly Christian prayers that refer to "Jesus." (J.A.10¶¶47-48, J.A.149¶¶47-48). The prayers are designated on the official program as "Prayer," which are distributed to attendees. (J.A.9-10¶¶38-45, J.A.19, J.A.148¶¶38-39, J.A.148-49¶¶41-45).

The Defendants do not deny that they have had a practice of "endorsing" Christian prayers at MVES ceremonies. (J.A.23, J.A.26, J.A.84n.2, J.A.100¶17). However, after litigation commenced, they claimed that "[a]ny future graduation will not involve any school-sponsored or endorsed prayer." (J.A.84n.2). Their only evidence of this is the principal's affidavit, which states: "I have revised the program for the 2014 graduation to eliminate any school-sponsored or endorsed

---

direct us as we begin this new adventure into middle school. We give you the praise for all our accomplishments. In Jesus' name I pray. Amen." (J.A.10¶48, J.A.149¶48).

invocations, prayers or benedictions." (J.A.100¶17).[3] Yet the Defendants will continue to permit prayers, including Christian prayers, to be delivered at upcoming graduations. In fact, they refuse to prohibit prayers at future MVES ceremonies. (J.A.11-12¶¶55-63, J.A.149¶¶55-63, J.A.26).

<u>The Chapel Policy</u>

Despite a variety of viable secular venues, including the gymnasiums, auditoriums, and football fields at any one of the School District's 100 schools, the Defendants insist on continuing to hold MVES graduations in the Turner Chapel, a Christian place of worship, located in the center of NGU's campus. (J.A.7-9¶¶15-37, J.A.146-48¶¶15-29, J.A.148¶¶31-37). NGU describes the Turner Chapel as a place where "[m]any students have received Jesus Christ as their personal Lord and Savior," "evangelism" is a focus, and "students are exposed to the truth of the gospel of Jesus Christ." (J.A.7¶17, J.A.147¶17). It is impossible to avoid the abundance of Christian iconography found in and around the chapel. A prominent Christian cross sits on top of the chapel. (J.A.140).[4] NGU's logo, which depicts its slogan, "Christ Makes the Difference," and a Christian cross in the center (J.A.18),

---

[3] This litigation-inspired change is referred to herein as the "new Prayer Policy" or simply the "new policy."

[4] Although not on the record, a large Christian cross also sits on top of the Hayes Ministry Center, adjacent to the chapel. http://www.ngu.edu/on-campus.php (accessed December 21, 2013). The Court can take judicial notice of this fact, as it is "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." FED. R. EVID. 201(b).

appears throughout the campus including at the entranceways to the chapel (J.A.8¶21, J.A.147¶21, J.A.131-32, J.A.138).[5] Surrounding the entire interior of the chapel are eight large stained glass windows of overtly religious Christian scenes, each of them featuring Jesus Christ. (J.A.8¶¶28-29, J.A.147-48¶¶28-29, J.A.124, J.A.128-29).[6] At the center of the chapel is a podium bearing NGU's religious logo and a Christian cross. (J.A.8¶27, J.A.147¶27, J.A.87, J.A.99¶11).

Procedural History

After filing their Verified Complaint on September 11, the Plaintiffs filed a motion for a preliminary injunction on September 16, to enjoin the Defendants from: (i) including prayers as part of any school-sponsored event, including graduations; and (ii) holding school-sponsored events, including graduations, in chapels or other religious venues. (J.A.29-30, J.A.31-65). They also filed a motion for the Does to proceed anonymously. (J.A.66-72). The District Court scheduled

---

[5] A prominent sign depicting the logo and slogan is on a stonewall near the parking lot of the Turner Chapel as well as above the entranceway to the Hayes Christian Fine Arts Center, near the chapel. http://www.ngu.edu/on-campus.php (accessed December 21, 2013). The Court may take judicial notice of this fact. FED. R. EVID. 201(b).

[6] The first panel depicts the birth of Jesus, with Jesus in a manger and Mary and Joseph kneeling to him. Above Jesus is a floating cross. The second depicts Jesus preaching to followers. The third depicts Jesus helping Peter, as described in Matthew 14:22-33. The fourth features Jesus talking to two children, most likely a reference to Matthew 18:1-6. (J.A.124). In the fifth, Jesus is praying in the garden of Gethsemane. The sixth depicts Jesus nailed to a cross. The seventh shows Jesus having supper with two disciples, as described in Luke 14:13-32. The eighth depicts the resurrection of Jesus, or Jesus ascending into heaven. (J.A.128).

both motions to be heard on December 3, 2013. (J.A.73). The Defendants filed their opposition brief to the preliminary injunction on November 15 (J.A.76), and filed their Answer on November 20, admitting to the vast majority of the allegations. (J.A.145-52). The Plaintiffs filed a reply brief on November 21. (J.A.153-168).

On the day before the hearing, the Honorable Ross Anderson filed an order requesting "more information on the issue of personal jurisdiction over Plaintiff American Humanist Association," directing AHA's counsel to provide him with "copies of all orders from this District finding personal jurisdiction to be proper within the past five years." (J.A.176).[7] While believing this request to be seriously misplaced, AHA's counsel complied. (J.A.178).[8] After holding a summary hearing, which amounted to nothing more than the court expressing its personal dislike for the case, the court denied both motions.  (J.A.183).

The Hearing

In the face of the uncontroverted evidence and binding authorities supporting the Plaintiffs' claims, the court went so far as to call the case "slanderous per se." (J.A.193¶¶24-25). At the beginning of the hearing, the court,

---

[7] Incidentally, on the same day, Judge Anderson also denied Plaintiffs' counsel's uncontested motion for a continuance due to a temporary illness (J.A.177) stating: "This Court does not believe that this Motion for Continuance, filed the afternoon before the hearing, should be granted at this time." (J.A.182).

[8] The Plaintiffs also filed a supplemental brief explaining why the cases involving personal jurisdiction are inapposite. (J.A.178-181).

after asserting it knew nothing about AHA (asking "where is he?" (J.A.185¶9)) despite detailed descriptions of the organization in the verified pleadings and briefs (J.A.5¶5, J.A.179-81), warned Plaintiffs' local counsel: "[Y]ou have made some very broad and disturbing charges against the Greenville school district." (J.A.186¶¶4-5). Although the Verified Complaint set forth the language of one of the prayers, (J.A.10¶48) which the Defendants admitted was a "prayer" delivered at a MVES ceremony (J.A.149¶48), and included a photocopy of the 2013 Graduation Program, which listed two "Prayers" (J.A.19), the court questioned whether a prayer was actually delivered, telling Plaintiffs' counsel: "I just don't like you putting stuff in the record that you can't back up." (J.A.189¶¶8-9). Plaintiffs' counsel responded: "[I]t speaks for itself, Your Honor, that we have a fifth grader reciting a prayer during a public school graduation in a church setting." (J.A.189¶¶18-21). The court immediately replied, "Well, that's not illegal in and of itself. The contract is what counts." (J.A.189¶¶22-23). It is unclear what "contract" the court was referring to. The court added: "And you haven't given me anything." (J.A.190¶¶4-5).

But the Verified Complaint and accompanying admissions in the Answer, as well as the affidavits and exhibits, serve as competent evidence in a motion for a

preliminary injunction.[9] Even though the Defendants admitted to all the material facts in their Answer, the admissions themselves being competent evidence, FED. R. EVID. 801(d)(2), the court accused the Plaintiffs of fabricating the lawsuit, contending: "I got up this morning. And on the front page of the Greenville News, where – that's the newspaper where this school is located and about all these horrible things they did. I says [sic] that's not the Greenville school district that I'm familiar with." (J.A.191¶¶13-17). Turning to Plaintiffs' counsel, the court opined, "And then you come down from New York; is that right? Are you from New York?" to which counsel replied: "No, Your Honor. I practice down in Lexington, South Carolina, where I've lived for 20 years." (J.A.191¶¶22-25). Judge Anderson then admonished: "I am, frankly, very upset with the way you have proceeded in this case . . . You have alleged all of these things about how

---

[9] "There is no disputing that an affidavit and a complaint may be the basis for a preliminary injunction unless the facts are substantially controverted by counter-affidavits." *McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012). *See also In re Patriot's Point Assocs*., 1990 U.S. App. LEXIS 26964 *14 (4th Cir. 1990) (unpublished) ("In the context of a preliminary injunction, . . . the district court may rely upon a verified complaint as a basis for an injunction."); *K–2 Ski Co. v. Head Ski Co*., 467 F.2d 1087, 1088-89 (9th Cir. 1972) (same); *Hunter v. Atchison, T. & S. F. Ry. Co.*, 188 F.2d 294, 298 (7th Cir. 1951) (same); *Parke, Davis & Co. v. Amalgamated Health & Drug Plan, Inc.*, 205 F. Supp. 597, 601 (S.D. N.Y. 1962) (same); 11 C. Wright & A. Miller, Federal Practice & Procedure, § 2949. *Cf. Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (a verified complaint can substitute for an affidavit opposing summary judgment). Admissions in the Answer are clearly admissible evidence as well. *Lockwood v. Wolf Corp.*, 629 F.2d 603, 611 (9th Cir. 1980); *Briggs v. Dalkon Shield*, 174 F.R.D. 369, 374 (D. Md. 1997) ("admissions made in pleadings or by counsel during in court proceedings may be used as evidentiary admissions").

horrible the school district is. Not one thing have you offered any proof." (J.A.193¶¶14-16). He proceeded to call the pleadings "slanderous per se" and said: "It looked like it was written by a PR man . . . That is not acceptable." (J.A.193-94¶¶3-4).

The court continued interrogating Plaintiffs' counsel, asking, "Have you ever attended any South Carolina Bar sponsored programs?" (J.A.197¶¶7-8). Counsel answered "Absolutely." (J.A.197¶9). The court responded: "Well, I want you to submit them to me." (J.A.197¶10).

In direct response to counsel's argument that the "school prayer[s]" violate the Establishment Clause, the court rhetorically asked: "By one, two, three, four windows? Stained glass windows?" (J.A.199¶¶3-4). Plaintiffs' counsel noted there are in fact eight windows in the chapel. (J.A.199¶¶5-6). The court responded: "No . . . I've got both of the photographs." (J.A.199¶¶7-12). Defense counsel shortly thereafter corrected his Honor, stating that there are indeed eight windows. (J.A.201¶¶16-18).

 Apparently misunderstanding what this case is about, the court then turned to defense counsel, opining: "They claim in the pleadings, nothing other than the pleadings, that you in fact run a *prayer meeting* in there." (J.A.201¶¶22-24). Defense counsel clarified that MVES has a "fifth-grade graduation" in the chapel. (J.A.202¶3). The case is quite clearly about prayers at *graduation ceremonies*

10

inside a Christian Chapel, not "prayer meetings." Moments later, the court asked Plaintiffs' counsel: "Do you have any evidence other than these *four* windows?" (J.A.203¶¶1-2). Counsel once again directed the court to the Verified Complaint and exhibits. (J.A.203¶¶3-13). Despite the undisputed evidence, the court concluded that the pleadings were "wild allegations" and denied the motions. (J.A.204¶9).

Both parties previously agreed to a 90-day extension of the scheduling order but Judge Anderson refused to grant it, contending, "[a]t my age, 90 days is a lifetime. I want to at least try and finish this case[,]" and concluding: "This is what you call, in my opinion, making a mountain out of a molehill." (J.A.205¶¶16-21).

## SUMMARY OF THE ARGUMENT

The School District has had a longstanding policy and practice of endorsing Christian prayers at its graduation ceremonies for elementary school children. School-selected students are asked by school officials to draft a "prayer" and deliver it at a formal school-organized ceremony. School officials frequently approved prayers that call to "Jesus," thus affiliating the School District not only with religion generally but also with Christianity specifically. Worse, the ceremonies are held during school hours in a Christian Chapel on the campus of a Baptist university, making it clear that the entire event is a school-endorsement of Christianity.

11

Yet the Supreme Court has already ruled that even nonsectarian prayers delivered at public school graduations violate the Establishment Clause. The Supreme Court has also held that even student-led and student-initiated prayers at school-sponsored events such as football games, and certainly then, graduations that occur during school hours, are unconstitutional. Nearly every federal court interpreting the Supreme Court's decisions has concluded that prayers delivered at public school graduations are unconstitutional, regardless of who delivers them.

Below it is shown that the Defendants' original Prayer Policy: (1) lacks a secular purpose; (2) unconstitutionally advances and endorses religion; (3) excessively entangles the school with religion; and (4) is unconstitutionally coercive. Any one of these factors would render the Defendants' practice violative of the Establishment Clause; with all four present, the violation is undeniable.

Furthermore, the Defendants' *new* Prayer Policy, which is nothing more than post-litigation statements by the principal, is equally unconstitutional. The Defendants will continue to permit the delivery of sectarian prayers at school-sponsored events for elementary students. The courts have made clear that because a graduation ceremony is a nonpublic forum, *any* prayers delivered at one, whether student-led or not, are governmental speech and thus prohibited by the Establishment Clause.

The Chapel Policy is also unconstitutional because elementary school children and their families are forced to attend a formal school event in a Christian Chapel, on the campus of a Baptist university, or forgo participation entirely. This is a choice, the Supreme Court has held, School Districts must not place on students. Thus, the Chapel Policy fails the coercion test, and also lacks a secular purpose, secular effect, and fosters excessive entanglement with religion.

Because the Plaintiffs are likely to prevail on the merits of their First Amendment claims, irreparable injury is presumed. Further, the Does, who plan on attending at least two MVES graduations in the future, will continue to be irreparably injured by these unconstitutional policies in the absence of an injunction. They are also harmed on a daily basis, independent of such attendance, by the School District's implementation of policies that cast the Does, who are non-Christians, as outsiders. The remaining two preliminary injunction factors clearly favor the Plaintiffs because the Defendants will suffer no legally cognizable harm and because injunctions to remedy constitutional violations are always in the public interest. Accordingly, the court below seriously erred in refusing to issue the preliminary injunction.

Finally, the District Court clearly abused its discretion in refusing to grant the Does' motion to proceed anonymously because it did not apply, or even discuss, any of the factors this Court has formulated to guide a judge's discretion.

The judge instead applied a blanket rule that no one in his court could be anonymous. Had the court applied the factors, it would have no choice but to conclude that the Does, a young student and her parents who are suing the government for an infringement of their constitutional rights, should be entitled to proceed anonymously, especially because the Defendants assented to the motion.

## ARGUMENT

### I. THE DISTRICT COURT ERRED IN DENYING THE PRELIMINARY INJUNCTION MOTION.

#### A. Standard of Review

Although the Court reviews the District Court's decision on a preliminary injunction for an abuse of discretion, it reviews the "legal conclusions *de novo*." *WV Ass'n of Club Owners & Fraternal Servs. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009). Findings of "constitutional fact" are also reviewed *de novo*. *Fleming v. Jefferson County Sch. Dist. R-1*, 298 F.3d 918, 922 (10th Cir. 2002). Indeed, the entire decision is reviewed *de novo*, where as here, the "'facts are established or of no controlling relevance.'" *Virginia Carolina Tools, Inc. v. Int'l Tool Supply, Inc.*, 984 F.2d 113, 116 (4th Cir. 1993) (citation omitted).

The District Court must consider the following factors in determining whether to issue a preliminary injunction: (1) the likelihood of irreparable harm; (2) the balance of the equities; (3) the public interest; and (4) the likelihood of success on the merits. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20

(2008). The court failed to apply any of these factors thus clearly abusing its discretion. Each factor indeed weighs heavily in the Plaintiffs' favor, *infra*.[10]

B. <u>The Plaintiffs will continue to suffer irreparable harm.</u>

The Plaintiffs easily satisfy the first factor because a violation of First Amendment rights "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). *See also Newsom v. Albemarle County Sch. Bd.*, 354 F. 3d 249, 261 (4th Cir. 2003). This includes violations of the Establishment Clause. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 303 (D.C. Cir. 2006) (an allegation of "a violation of the Establishment Clause" is "sufficient, without more, to satisfy the irreparable harm prong").[11] Moreover, a "movant who

---

[10] Notably, many district courts have issued preliminary injunctions to enjoin similar graduation prayer practices. *See, e.g.*, *Workman v. Greenwood Cmty. Sch. Corp.*, 2010 U.S. Dist. LEXIS 42813, *27 (S.D. Ind. 2010) (preliminary injunction because "permitting a student-led prayer" at the graduation "represents a clear violation of the Establishment Clause"); *Doe v. Gossage*, 2006 U.S. Dist. LEXIS 34613, *19-20 (W.D. Ky. 2006) (TRO prohibiting student-led prayer at graduation); *Deveney v. Bd. of Educ. of Cnty. of Kanawha*, 231 F. Supp. 2d 483, 485-88 (S.D. W.VA. 2002) (same); *Skarin v. Woodbine Cmty. Sch.*, 204 F. Supp. 2d 1195, 1198 (S.D. Iowa 2002) (preliminary injunction prohibiting Lord's Prayer at graduation); *Appenheimer v. Sch. Bd.*, 2001 WL 1885834, *6-9 (C.D. Ill. 2001) (TRO prohibiting student-led prayer at graduation). *See also Does v. Enfield Pub. Schools*, 716 F. Supp. 2d 172 (D. Conn. 2010) (preliminary injunction enjoining school from holding graduations in a church). Courts have issued preliminary injunctions to prohibit prayer at similar school functions such as assemblies. *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996); *Collins v. Chandler Unified Sch. Dist.*, 644 F.2d 759, 760-63 (9th Cir. 1981).

[11] *See also Ingebretsen*, 88 F. 3d at 280 (preliminary injunction was properly issued to enjoin statute permitting prayer at compulsory and noncompulsory school events); *Doe v. Duncanville Indep. Sch. Dist.*, 994 F.2d 160, 166 (5th Cir. 1993)

makes a strong showing of likelihood of success on the merits is entitled to a presumption of irreparable harm." *Gossage*, 2006 U.S. Dist. LEXIS 34613 at *21 (citations omitted). *See Musgrave*, 553 F.3d at 298; *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 11 (1st Cir. 2012) ("irreparable injury is presumed upon a determination that the movants are likely to prevail on their First Amendment claim."). Because the Plaintiffs "made a strong showing of likelihood of success on the merits of their First Amendment claim[,]" *infra*, the irreparable injury element "is satisfied." *Id.* at 15.

But even without this presumption, the Plaintiffs will continue to suffer irreparable harm because: (1) the Does will attend an MVES graduation in the coming school year (J.A.170¶¶1-3, J.A.173¶¶1-2); *see, e.g.*, *Workman*, 2010 U.S. Dist. LEXIS 42813 at *5-6 (finding to be "clearly ripe" a "challenge [to] the constitutionality of the District's established policy relating to graduation prayer");[12] and (2) the enactment of the Graduation Policies in and of themselves irreparably harms the Plaintiffs in an immediate and ongoing manner, independent

---

(*Duncanville I*) (when "Establishment Clause rights have been infringed, the threat of irreparable injury" is "adequately demonstrated."); *Parents' Assoc. of P.S. 16 v. Quinones*, 803 F.2d 1235, 1242 (2nd Cir. 1986); *ACLU v. City of St. Charles*, 794 F.2d 265, 275 (7th Cir. 1986); *S.D. v. St. Johns County Sch. Dist.,* 632 F. Supp. 2d 1085, 1096 (M.D. Fla. 2009).

[12] Litigation, including appeals, may go well beyond two years. *See, e.g.*, *Interplay Ent't Corp. v. Topware Interactive, Inc.*, 751 F. Supp. 2d 1132, 1138 (C.D. Cal. 2010) ("The [irreparable] harm will be especially acute because [it will occur] sometime next year and this litigation is unlikely to be resolved before then.").

of their attendance at future graduations. *See, e.g.*, *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 316 (2000) ("[t]he simple enactment of this policy, with the purpose and perception of school endorsement of student prayer, was a constitutional violation. We need not wait for the inevitable to confirm and magnify the constitutional injury.").

The Graduation Policies, which convey a message that Christians occupy a favored place in the School District, make the Does, who are non-Christians, feel like outsiders. (J.A.6¶¶7-9; J.A.170-71¶4). Thus, they will continue to be irreparably injured absent an injunction, regardless of whether they attend the 2014 graduation. *See id.* at 313-14 (the school district's argument "assumes that we are concerned only with the serious constitutional injury that occurs when a student is forced to participate in an act of religious worship because she chooses to attend a school event. . . . [Another injury] is the mere passage by the District of a policy that has the purpose and perception of government establishment of religion."); *Moss v. Spartanburg County Sch. Dist. Seven*, 683 F.3d 599, 605 (4th Cir. 2012) (parent and graduated daughter had standing to challenge school's release-time policy because they were "not Christians, [and] the School District's alleged Christian favoritism made them feel like 'outsiders' in their own community.").

C. <u>An injunction will not harm the Defendants.</u>

Against "the certain and irreparable harm that will befall" the Plaintiffs, the Defendants would only be required to alter their "graduation ceremon[ies] in [a] relatively minor way. The First Amendment injury . . . clearly outweighs the [School] District's minimal harm." *Workman*, 2010 U.S. Dist. LEXIS 42813 at *26. In fact, the Defendants will suffer no *legally* cognizable harm. *See, e.g.*, *Gossage*, 2006 U.S. Dist. LEXIS 34613 at *21-22 ("The Defendant has no legally protected interest in promoting messages of religious content at a school-sponsored graduation ceremony"); *Deveney*, 231 F. Supp. 2d at 487 (same). *See also Newsom*, 354 F. 3d at 261 (the government "is in no way harmed by issuance of a preliminary injunction which prevents it from" acting in a way "which is likely to be found unconstitutional"). Hence, the second factor is met.

D. <u>Upholding constitutional rights is *always* in the public interest.</u>

This Court has made clear that "upholding constitutional rights serves the public interest." *Id.* It is obviously in the public interest – and compellingly so – to protect minority groups, religious or otherwise, from majority pressure and coercion. *Lee v. Weisman*, 505 U.S. 577, 590-92 (1992). In contrast, the public has no legitimate interest in seeing its government violate the Establishment Clause. *Borden v. Sch. Dist.*, 523 F.3d 153, 174 n.16 (3rd Cir. 2008). Thus, the injunction sought here is patently in the public interest. *See Workman,* 2010 U.S. Dist. LEXIS

42813 at *26-27 (preliminary injunction to prevent prayer at graduation was in public interest); *Gossage,* 2006 U.S. Dist. LEXIS 34613 at *22 (same); *Deveney*, 231 F. Supp. 2d at 487 (same).

    E. <u>The Plaintiffs are likely to succeed on the merits.</u>

It is difficult to conceive of a greater breach of the Establishment Clause than what is presented in the case *sub judice*. The "Constitution mandates that the government remain secular, rather than affiliate itself with religious beliefs" or "'favor religious belief over disbelief.'" *County of Allegheny v. ACLU*, 492 U.S. 573, 610, 593 (1989) (citation omitted). To comply with the Establishment Clause, a governmental practice must pass the *Lemon* test,[13] pursuant to which it must: (1) have a secular purpose; (2) not have the effect of advancing or endorsing religion; and (3) not foster excessive entanglement with religion. *Id.* at 592. Although "coercion is not necessary to prove an Establishment Clause violation," its presence "is an obvious indication that the government is endorsing or promoting religion." *Lee*, 505 U.S. at 604 (Blackmun, J., concurring). In *Lee*, the Court formulated the "coercion test" under which the "government may not coerce anyone to support or participate in religion or its exercise," and held that a public school's inclusion of nonsectarian prayers in its graduation ceremonies failed the

---

[13] The test is derived from *Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971).

test. *Id.* at 587. *See Mellen v. Bunting*, 327 F.3d 355, 367, 370-72 (4th Cir. 2003) (applying *Lemon* and coercion test and concluding that school prayers failed both).

As shown below, both Graduation Policies, standing alone and doubly so when combined, violate the Establishment Clause under both tests, making the Plaintiffs highly likely to prevail on the merits.

## II.  MVES GRADUATION PRAYERS VIOLATE THE ESTABLISHMENT CLAUSE.

The issues presented in this case are not novel. *See, e.g.*, *Santa Fe*, 530 U.S. at 303 (policy permitting student-led prayers preceding public school football games held unconstitutional); *Lee*, 505 U.S. at 579 (nonsectarian prayer at graduation held unconstitutional). There is a long line of Supreme Court cases "of considerable parentage that prohibits prayer in the school classroom or environs." *Duncanville I*, 994 F.2d at 164.[14] The courts "have clearly ruled that" including prayer in a school-sponsored event is unconstitutional regardless of whether it is "led by students or teachers." *Herdahl v. Pontotoc County Sch. Dist.*, 933 F. Supp. 582, 591 (N.D. Miss. 1996) (*citing Wallace*, 472 U.S. 38; *Engel*, 370 U.S. at 430; *Karen B.*, 653 F.2d at 901-02; *Ingebretsen*, 88 F.3d 274). *See Allegheny*, 492 U.S. at 590 n.40 ("state-sponsored prayer in public schools" is "unconstitutional"). *See*

---

[14] *See Wallace v. Jaffree*, 472 U.S. 38, 48 (1985); *Sch. Dist. Abington v. Schempp*, 374 U.S. 203, 205 (1963); *Engel v. Vitale*, 370 U.S. 421 (1962); *Karen B. v. Treen*, 653 F.2d 897 (5th Cir. 1981), *aff'd*, 455 U.S. 913 (1982). *See also Stone v. Graham*, 449 U.S. 39 (1980).

*also Holloman v. Harland,* 370 F.3d 1252, 1285 (11th Cir. 2004) (teacher's prayers unconstitutional); *Doe v. Duncanville Indep. Sch. Dist.*, 70 F.3d 402, 407 (5th Cir 1995) (*Duncanville II*) (prayers at public school basketball games unconstitutional); *Jager v. Douglas County Sch. Dist.*, 862 F.2d 824, 830 (11th Cir. 1989) (student-led prayers at football games unconstitutional).

As a result of this well-settled jurisprudence, "a constitutional violation inherently occurs when, in a secondary school graduation setting, a prayer is offered, regardless of who makes the decision that the prayer will be given and who authorizes the actual wording of the remarks." *Gearon v. Loudoun County Sch. Bd.*, 844 F. Supp. 1097, 1099 (E.D. Va. 1993) (permanently enjoining school from permitting prayers to be offered at graduations). The prayers here are particularly troubling because they are offered at graduations for elementary students. The "Establishment Clause plainly forbids public schools from sponsoring an official prayer for young children." *Mellen*, 327 F.3d at 376.

Since *Lee*, the federal circuit courts have been nearly unanimous in concluding that prayers delivered at primary and secondary public school graduations violate the Establishment Clause, even when the prayers are student-led. *See Doe v. Santa Fe Indep. Sch. Dist.*, 168 F.3d 806, 816 (5th Cir. 1999), *aff'd*, 530 U.S. 290 (2000) (permitting students to deliver sectarian prayers at graduations violated Establishment Clause); *Lassonde v. Pleasanton Unified Sch. Dist.*, 320

F.3d 979, 983 (9th Cir. 2003) (student-delivered religious speech at graduation is unconstitutional); *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1104 (9th Cir. 2000) (same); *ACLU v. Black Horse Pike Regional Bd. of Educ.*, 84 F.3d 1471, 1488 (3d Cir. 1996) (same); *Harris v. Joint School Dist. No. 241*, 41 F.3d 447, 454 (9th Cir. 1994), *judgment vacated on other grounds*, 515 U.S. 1154 (1995), 62 F.3d 1233 (9th Cir. 1995) (same).[15]

Federal district courts, including those within the Fourth Circuit, as well as state courts, have been similarly unanimous in holding that prayers at public school graduations are unconstitutional. *See Workman*, 2010 U.S. Dist. LEXIS 42813 at *27 (school's practice "permitting a student-led prayer at [the graduation] represents a clear violation of the Establishment Clause"); *Gossage*, 2006 U.S. Dist. LEXIS 34613 at *19-20 (same); *Ashby v. Isle of Wight County Sch. Bd.*, 354 F. Supp. 2d 616, 629-30 (E.D. Va. 2004) (prohibiting religious song at graduation prevented Establishment Clause violation); *Deveney*, 231 F. Supp. 2d at 485-88

---

[15] *See also Nurre v. Whitehead*, 580 F.3d 1087, 1098 (9th Cir. 2009), *cert. denied*, 130 S. Ct. 1937 (2010) (school district's action in keeping all musical performances at graduation secular was reasonable); *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1231 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 742 (2009) (school could require student to apologize for expressing religious beliefs in valedictory speech because "her speech is school-sponsored"); *Warnock v. Archer*, 443 F.3d 954 (8th Cir. 2006) (affirming contempt order on school district for violating injunction prohibiting it from orchestrating or supervising prayers at graduation ceremonies); *Carlino v. Gloucester City High Sch.*, 57 F. Supp. 2d 1 (D.N.J. 1999), *aff'd* 44 Fed. Appx. 599 (3rd Cir. 2002) (principal's involvement with a baccalaureate service violated the Establishment Clause).

(student-led prayer at graduation unconstitutional); *Skarin*, 204 F. Supp. 2d at 1198 (Lord's Prayer at graduation unconstitutional); *Appenheimer*, 2001 WL 1885834 at *6-9 (student-led prayers at graduation unconstitutional); *Gearon*, 844 F. Supp. at 1099 (same); *Lundberg v. W. Monona Cmty. Sch. Dist.*, 731 F. Supp. 331, 333, 345-46 (N.D. Iowa 1989) (permitting prayers at graduation is unconstitutional); *Graham v. Central Cmty. Sch. Dist.*, 608 F. Supp. 531 (S.D. Iowa 1985) (same); *Committee for Voluntary Prayer v. Wimberly*, 704 A.2d 1199 (D.C. 1997) (initiative to allow prayer at public school events unconstitutional); *Sands v. Morongo Unified Sch. Dist.*, 53 Cal. 3d 863  (Cal. 1991), *cert. denied*, 505 U.S. 1218 (1992) (graduation prayers unconstitutional); *Bennett v. Livermore Unified Sch. Dist.*, 193 Cal. App. 3d 1012 (1st Dist. 1987) (same).

Courts have also ruled that prayers offered in public school classrooms,[16] assemblies,[17] and athletic events[18] violate the Establishment Clause. Given the clarity of the jurisprudence, the District Court clearly erred in refusing to issue the injunction.

---

[16] *See Doe v. Sch. Bd.*, 274 F.3d 289, 294 (5th Cir. 2001); *Karen B.*, 653 F.2d at 902; *Meltzer v. Bd. of Pub. Instruction,* 548 F.2d 559, 574 (5th Cir. 1977); *Mangold v. Albert Gallatin Area Sch. Dist.*, 438 F.2d 1194, 1195-96 (3rd Cir. 1971); *Doe v. Wilson Cty. Sch.*, 564 F. Supp. 2d 766 (M.D. Tenn. 2008).

[17] *See Ingebretsen,* 88 F.3d at 277; *Collins*, 644 F.2d at 760-63; *St. Johns County*, 632 F. Supp. 2d at 1100; *Golden v. Rossford Exempted Vill. Sch. Dist.*, 445 F. Supp. 2d 820, 823-25 (N.D. Ohio 2006).

[18] *See Santa Fe*, 530 U.S. at 303; *Duncanville II,* 70 F.3d at 407; *Duncanville I,* 994 F.2d 160; *Borden,* 523 F.3d 153; *Jager*, 862 F.2d at 831; *Doe v. Aldine Indep. Sch. Dist.*, 563 F. Supp. 883, 866-88 (S.D. Tex. 1982).

A. Student-led prayers at MVES graduations are government speech.

It is important to make clear at the outset that prayers delivered at MVES graduations are *government* speech. *See Lee*, 505 U.S. at 590; *Santa Fe*, 530 U.S. at 302-03 (student-led prayers at football games were government speech); *Child Evangelism Fellowship v. Montgomery County Pub. Schs*, 373 F.3d 589, 598 n.5 (4th Cir. 2004) (noting that the "prayer cases" including *Santa Fe*, *Lee*, and *Mellen*, "did not involve equal access; rather, government officials there granted an inherently religious activity (prayer) sole access to student audiences."). Nearly every federal circuit court that has addressed the issue has concluded that prayers delivered at public school graduations are government speech and that graduations are *not* public or limited public forums for private speech. *See Corder*, 566 F.3d at 1229-31 (graduation is "clearly a school-sponsored event" and student's religious speech was "school-sponsored" even though there were "fifteen valedictory speakers"); *Cole*, 228 F.3d at 1102 (a student's "invocation would not have been private speech," and school's "refusal to allow [the student] to deliver a sectarian invocation" was "necessary to avoid an Establishment Clause violation"); *Santa Fe*, 168 F.3d at 818-22 (holding "as a matter of law [the school] has not created a limited public forum" at its graduations); *Black Horse*, 84 F.3d at 1477-78 (school's policy permitting students to vote to include prayer in graduation did not create limited public forum); *Harris*, 41 F.3d at 456-57 (same); *Brody v. Spang*,

957 F.2d 1108, 1119-20, 1117 (3d Cir. 1992) ("[g]raduation ceremonies have never served as forums" for private speech) (quotation omitted).

Federal district courts, including those within the Fourth Circuit, have similarly rejected the notion that graduations are fora for private speech. *See Workman*, 2010 U.S. Dist. LEXIS 42813 at *22-23 (rejecting contention that "the prayer that will be offered at [school's] commencement ceremony is not government speech" as this "ignores the clear holding of *Santa Fe* to the contrary"); *Ashby*, 354 F. Supp. 2d at 629; *Gossage*, 2006 U.S. Dist. LEXIS 34613 at *10-11; *Deveney*, 231 F. Supp. 2d at 487-88; *Skarin*, 204 F. Supp. 2d at 1197; *Appenheimer*, 2001 WL 1885834 at *6-9; *Gearon*, 844 F. Supp. at 1099-100; *Lundberg*, 731 F. Supp. at 337. Student-delivered prayers at other school events such as awards ceremonies,[19] athletic events[20] and assemblies,[21] are deemed governmental speech as well. Therefore, the Defendants cannot "evade the requirements of the Establishment Clause by running for the protective cover of a designated public forum." *Santa Fe*, 168 F.3d at 818-20.[22]

---

[19] *A.M. v. Taconic Hills Cent. Sch. Dist.*, 510 Fed. Appx. 3, 7 (2d Cir. 2013) (unpublished).
[20] *Santa Fe*, 530 U.S. at 303.
[21] *Ingebretsen v. Jackson Pub. Sch. Dist.*, 864 F. Supp. 1473, 1490 (S.D. Miss. 1994); *Collins*, 644 F.2d at 762-63; *St. Johns*, 632 F. Supp. at 1094-95; *Golden*, 445 F. Supp. 2d at 825.
[22] Even assuming, *arguendo*, that MVES "created a public forum," the Supreme Court has "never held [that] the mere creation of a public forum shields the government entity from scrutiny under the Establishment Clause." *Santa Fe*, 530

B.  The Prayer Policy fails the *Lemon* test.

**1.  The Prayer Policy lacks a secular purpose.**

Where, as here, a school sponsors an "intrinsically religious practice" such as prayer, it "cannot meet the secular purpose prong." *Jager*, 862 F.2d at 830 (permitting student-led prayers at football games lacked secular purpose). *See Santa Fe*, 530 U.S. at 309 ("infer[ring] that the specific purpose of the policy" permitting but not requiring student-led prayers was religious thus failing the purpose prong). The secular purpose required by *Lemon* must be the "pre-eminent" and "primary" force driving the action, and "has to be genuine, not a sham, and not merely secondary to a religious objective." *McCreary County v. ACLU*, 545 U.S. 844, 864 (2005). A religious purpose may be presumed where "the government action itself besp[ea]k[s] the purpose, as in *Abington*, where the object of required Bible study in public schools was patently religious." *Id.* at 862.

Because "prayer is 'a primary religious activity in itself,'" a school's "intent to facilitate or encourage prayer in a public school is per se an unconstitutional intent to further a religious goal." *Holloman*, 370 F.3d at 1285. *See also Jaffree v. Wallace*, 705 F.2d 1526, 1534-35 (11th Cir. 1983), *aff'd*, 472 U.S. 38 (1985)

---

U.S. at 303 n.13. *See Cole*, 228 F.3d at 1101 (even assuming the "graduation ceremony was a public or limited public forum, the District's refusal to allow the students to deliver a sectarian speech or prayer" was "necessary to avoid violating the Establishment Clause"); *Herdahl*, 933 F. Supp. at 589 (even if a school "established a limited open forum" sectarian "prayer broadcast over the public school loudspeaker would still violate the First Amendment").

(same); *North Carolina Civil Liberties Union v. Constangy*, 947 F.2d 1145, 1150 (4th Cir. 1991) (finding religious purpose in judge's practice of opening court sessions with prayer, as it involved "an act so intrinsically religious").

Applying this presumption, courts have consistently held that permitting prayers to be delivered by students or clergy at public school graduations by definition furthers a religious purpose, thus failing *Lemon. See Santa Fe*, 168 F.3d at 816-17; *Black Horse*, 84 F.3d at 1484-85; *Harris*, 41 F.3d at 458; *Gossage*, 2006 U.S. Dist. LEXIS 34613 at *19-20; *Skarin*, 204 F. Supp. 2d at 1198; *Appenheimer*, 2001 WL 1885834 at *10 (same, and adding that "allowing the students to decide whether to include prayer does not cure the problem"); *Gearon*, 844 F. Supp. at 1102; *Lundberg*, 731 F. Supp. at 342; *Graham*, 608 F. Supp. at 535; *Wimberley*, 704 A.2d at 1203; *Bennett*, 193 Cal. App. 3d at 1020. *See also Ingebretsen*, 88 F.3d at 279 (purpose behind informing students "that they can pray at any school event so long as a student 'initiates' the prayer" cannot "be characterized as 'secular'"); *Collins*, 644 F.2d at 762 ("the invocation of assemblies with prayer has no apparent secular purpose").

Certainly, no secular purpose can ever be ascribed to a school's practice that permits *sectarian* prayers, which are intrinsically "polarizing and politicizing," to be delivered to elementary school children. *Santa Fe*, 168 F.3d at 809, 816. *Cf. Santa Fe*, 530 U.S. at 294 (practice permitting student-initiated *nonsectarian*

prayers for high school students lacked secular purpose). As such, the Prayer Policy, which permits Christian prayers both in its pre-litigation and litigation-inspired form, lacks a secular purpose.

The Prayer Policy fails the purpose prong for a second reason. That is, when religious means are unnecessarily employed to achieve a secular end (such as honoring graduating students), the state's decision to use religious means is unconstitutional. *Schempp*, 374 U.S. at 223-24; *Karen B.*, 653 F.2d at 901; *Hall v. Bradshaw*, 630 F.2d 1018, 1020-21 (4th Cir. 1980) (state's inclusion of prayer on state map failed purpose prong based in part on this rationale); *Jager*, 862 F.2d at 830. Because the government has unnecessarily injected religion into a school-sponsored event, *Black Horse*, 84 F.3d at 1484-85, it lacks a secular purpose under *Lemon*.

### 2. The Prayer Policy unconstitutionally endorses religion.

Prayers delivered at MVES graduations fail the effect prong of *Lemon* because they advance and endorse religion over nonreligion and Christianity specifically. A prayer, "because it is religious, . . . advance[s] religion." *Hall*, 630 F.2d at 1021. Applying the effect prong, courts "pay particularly close attention to whether the challenged governmental practice" has the effect of "endorsing religion." *Allegheny*, 492 U.S at 591.[23] There is no question that "facilitating any

---

[23] This Court treats "the endorsement test as a refinement of *Lemon's* second

prayer clearly fosters and endorses religion over nonreligion." *Holloman*, 370 F.3d at 1288. Consequently, nearly every case involving graduation prayers held that they unconstitutionally advance or endorse religion in violation of *Lemon's* second prong, even if the prayers were student-led. *See Cole*, 228 F.3d at 1103-04; *Santa Fe*, 168 F.3d at 817; *Black Horse*, 84 F.3d at 1486; *Harris*, 41 F.3d at 458; *Gossage*, 2006 U.S. Dist. LEXIS 34613 at *19-20; *Deveney*, 231 F. Supp. 2d at 487; *Skarin*, 204 F. Supp. 2d at 1198; *Appenheimer*, 2001 WL 1885834 at *6; *Gearon*, 844 F. Supp. at 1102; *Lundberg*, 731 F. Supp. at 345; *Graham*, 608 F. Supp. at 536; *Wimberly*, 704 A.2d at 1203; *Sands*, 53 Cal. 3d at 876.

Prayers delivered at MVES graduations, as in the above cases, have "the primary effect of promoting religion, in that [they] send[] the unequivocal message" that the School District "endorses the religious expressions embodied in the prayer[s]." *Mellen*, 327 F.3d at 372. Whenever a prayer "occurs at a school-sponsored event . . . the conclusion is inescapable that the religious invocation conveys a message that the school endorses" it. *Jager*, 862 F.2d at 831-32. The policy challenged in *Santa Fe* allowed the senior class to elect students to deliver a "brief invocation and/or message" at football games. 530 U.S. at 296-97. Despite the fact that any message would be student-led and student-initiated, the Court

---

prong." *Mellen*, 327 F.3d at 371 (citation omitted).

found that the policy "involves both perceived and actual endorsement of religion." *Id.* at 305, 310.

MVES prayers, like those in *Lee* and *Santa Fe*, are "delivered to a large audience assembled as part of a regularly scheduled, school-sponsored function." *Id.* at 307. Students are under the supervision and direction of school officials. (J.A.10¶¶49-52, J.A.149¶¶49-52). Moreover, unlike the football games in *Santa Fe*, MVES graduations occur during the regular school day and the students are taken to the Turner Chapel in school busses and are returned to MVES after the ceremony. (J.A.97¶3, J.A.113-117). In this context, "an objective observer" would inevitably "perceive [the prayers] as a state endorsement of prayer." *Id*. at 308 (internal quotation marks omitted).

That the prayers may be student-led or even student-initiated does not change this conclusion. *See id.* at 294, 308. It is sufficient that the School District *permits* prayers to be delivered at its graduations, particularly for elementary students. *See, e.g.*, *Cole*, 228 F.3d at 1104 (merely "*allowing* the students to engage in sectarian prayer" amounts "to government sponsorship of . . . religious practices"); *Santa Fe*, 168 F.3d at 817 (school's policy "*permitting*" sectarian prayers at graduations failed effect prong); *Black Horse*, 84 F.3d at 1482-86 (*permitting any* prayers at graduation failed effect prong); *Harris*, 41 F.3d at 454-55 (same); *Workman*, 2010 U.S. Dist. LEXIS 42813 at *27 ("*permitting* a student-

30

led prayer at [the graduation] represents a clear violation of the Establishment Clause"); *Gearon*, 844 F. Supp. at 1102 (same) (emphasis added in each).

In *Santa Fe*, the school argued that its graduation policy was constitutional because it "permits but does not require prayer." 168 F.3d at 818 n.10. The Fifth Circuit rejected this argument, observing that "such 'permission' undoubtedly conveys a message . . . that the government endorses religion." *Id.* at 817-18. The court went on to note that even if prayers were "spontaneously initiated[,]" school "officials are present and have the authority to stop the prayers." *Id.* Hence, that policy, like MVES's supposed new policy, was unconstitutional. *See also Lassonde*, 320 F.3d at 984 ("if the school had not censored the [religious] speech, the result would have been a violation of the Establishment Clause.").

The Third and Ninth Circuits similarly held, even prior to *Santa Fe*, that school districts could not delegate authority to students to decide whether or not to have a prayer, as this is a decision the school itself could not make. *Black Horse*, 84 F.3d at 1483; *Harris*, 41 F.3d at 455. In *Black Horse*, the school's policy "allowed the senior class officers to conduct a poll" to "determine whether seniors wanted 'prayer, a moment of reflection, or nothing at all.'" 84 F.3d at 1475. The policy also provided that "[s]uch prayer must be performed by a student," and "that printed programs for the graduation include a disclaimer." *Id.* Nevertheless, the policy unconstitutionally endorsed religion because it *permitted* prayers to be

delivered. The court was not inclined to "alter [its] analysis merely because [the policy] does not expressly allow proselytization." *Id.* at 1479. In *Harris*, the school's policy similarly allowed graduating seniors to vote on whether prayer should be included. 41 F.3d 447. The Ninth Circuit held that the policy violated the Establishment Clause even though any prayer would have to be initiated, selected, and delivered by students, explaining: "When the senior class is given plenary power over a state-sponsored, state-controlled event such as high school graduation, it is just as constrained by the Constitution as the state would be." *Id*. at 455.

Courts have reached the same conclusion regarding prayers at similar school events. For instance, in *Collins*, the Ninth Circuit held that permitting students to open assemblies, which were organized and conducted by the student body (unlike graduation ceremonies), with a prayer, amounted to unconstitutional school endorsement of religion. 644 F.2d at 760-62. The court reasoned that the Supreme Court "cases support no meaningful distinction between school authorities actually organizing the religious activity and officials merely 'permitting' students to direct the exercises." *Id.* at 761. *See also Ingebretsen*, 88 F.3d at 277 (statute providing that "nonsectarian, nonproselytizing student-initiated voluntary prayer shall be *permitted* during compulsory or noncompulsory school-related student assemblies" was unconstitutional) (emphasis added). In *Holloman*, the Eleventh Circuit

emphasized that "[s]chool personnel may not facilitate prayer simply because a student requests or leads it." 370 F.3d at 1287. Rather, "it is the act of turning over the 'machinery of the State' to the students . . . to broadcast their religion which violates the Constitution." *Herdahl*, 933 F. Supp. at 589.

Of course, prayers delivered at MVES graduations are not student-initiated. School officials ask students to write a "prayer" and deliver it. (J.A.10¶¶44-46, J.A.10¶52, J.A.148¶44, J.A.149¶46, J.A.149¶52). And unlike the student-election in *Santa Fe*, MVES school officials personally select the speakers. (*Id.*). MVES also designates two slots in its ceremony for "prayer" and prints this on the official program. (J.A.9¶38, J.A.19, J.A.148¶38). Worse, school officials review and approve the content of the prayers beforehand, making the Prayer Policy exceedingly more egregious than the one struck down in *Santa Fe*. (J.A.11¶¶53-54, J.A.149¶¶53-54). As this Court recognized, "[w]hen government officially *approves* a prayer, it unconstitutionally favors one religious view over others." *Hall*, 630 F.2d at 1023 (citations omitted, emphasis added). Because the degree of state involvement in MVES prayers is considerably greater than that found unconstitutional in *Santa Fe*, the Prayer Policy clearly fails the *Lemon* test as well.

Several additional factors also make the Defendants' policy more troubling than the policies struck down in *Santa Fe*, *Lee* and their progeny. First, the Defendants authorize and sponsor *sectarian* prayers with references to "Jesus."

(J.A.10¶¶47-48; J.A.149¶¶47-48). *See Lee*, 505 U.S. at 589 (noting that a nonsectarian prayer is less egregious than one which "makes explicit reference" to "Jesus Christ"); *Cole*, 228 F.3d at 1104 (a "sectarian invocation would have caused a more serious Establishment Clause violation than in *Santa Fe*"); *Santa Fe*, 168 F.3d at 809, 815. Nonsectarian prayers are of course unconstitutional too. *Lee*, 505 U.S. at 589-90; *Mellen*, 327 F.3d at 374 n.12 (the "Establishment Clause prohibits a state from sponsoring any type of prayer, even a nondenominational one."); *Hall*, 630 F.2d at 1019-20 (same).

Second, the Defendants' prayers are delivered to young and impressionable elementary school children, thereby heightening the endorsement concerns. *See Lee*, 505 U.S. at 592, 595; *Schempp*, 374 U.S. at 307 (Goldberg, J., concurring); *Mellen*, 327 F.3d at 371. *Lee* involved eighth graders and nearly every other case finding graduation prayers unconstitutional involved high school students.[24] This Court has distinguished elementary students from high school students for purposes of endorsement, even where genuinely private speech was involved, affording the younger students greater protection. *Peck v. Upshur County Bd. of*

---

[24] *Santa Fe*, 168 F.3d 806; *Lassonde*, 320 F.3d 979; *Cole*, 228 F.3d 1092; *Black Horse*, 84 F.3d 1471; *Harris*, 41 F.3d at 455; *Workman*, 2010 U.S. Dist. LEXIS 42813; *Gossage*, 2006 U.S. Dist. LEXIS 34613; *Ashby*, 354 F. Supp. 2d 616; *Deveney*, 231 F. Supp. 2d 483; *Skarin*, 204 F. Supp. 2d 1195; *Appenheimer*, 2001 WL 1885834; *Gearon*, 844 F. Supp. 1097; *Lundberg*, 731 F. Supp. 331; *Graham*, 608 F. Supp. 531; *Sands*, 53 Cal. 3d 863; *Bennett*, 193 Cal. App. 3d 1012. *Cf. Wimberly*, 704 A.2d 1199 (all schools).

*Educ.*, 155 F.3d 274, 288 n* (4th Cir. 1998) (equal access policy allowing the limited display of religious and non-religious materials by private groups was unconstitutional "in the elementary schools" but not in the high schools due to the impressionability of the younger children). The Fifth and Third Circuits have done so as well. *See Morgan v. Swanson*, 659 F.3d 359, 382 (5th Cir. 2011); *Walz v. Egg Harbor Twp. Bd. of Educ.*, 342 F.3d 271, 277-79 (3d Cir. 2003). Not only does the young age of the students make the Defendants' policy more problematic than those found unconstitutional in other cases, but it also makes this case distinguishable from the few cases upholding graduation prayers since *Lee*.[25]

Finally, the Defendants' prayers are delivered in a religious setting: a Christian Chapel on the campus of a Christian university, thus compounding the

---

[25] *See, e.g.*, *Adler v. Duval County Sch. Bd.*, 250 F.3d 1330, 1331-32 (11th Cir. 2001) (upholding policy which allowed unrestricted, un-reviewed, student-led messages at *high school* graduations); *Chaudhuri v. Tennessee*, 130 F.3d 232, 239 (6th Cir. 1997) (upholding *university's* moment of silence at graduations, noting "[w]e may safely assume that doctors of philosophy are less susceptible to religious indoctrination than children are."); *Tanford v. Brand*, 104 F.3d 982, 985-86 (7th Cir. 1997) (nonsectarian invocation at *university* graduation upheld as "'University students . . . are less impressionable than younger students'") (citation omitted); *Jones v. Clear Creek Indep. Sch. Dist.*, 977 F.2d 963, 967 (5th Cir. 1992) (upholding resolution "permitting *high school* seniors to choose student volunteers to deliver *non-sectarian*, non-proselytizing invocations") (emphasis added). Importantly, *Jones* was implicitly overruled by *Santa Fe*. *See Does 1-7 v. Round Rock Indep. Sch. Dist.*, 540 F. Supp. 2d 735, 747-48 (W.D. Tex. 2007). Courts have also held that *Adler* conflicts with *Santa Fe*. *See Gossage*, 2006 U.S. Dist. LEXIS 34613 at *20-21.

school's endorsement of Christianity. *A fortiori*, the Prayer Policy is unconstitutional.

### 3.  The Prayer Policy causes excessive entanglement with religion.

The school's oversight, sponsorship, and control over the graduation prayers foster excessive entanglement with religion, prohibited by *Lemon's* third prong. *Cf. Coles v. Cleveland Bd. of Educ.*, 171 F.3d 369, 385 (6th Cir. 1999) (finding excessive entanglement where "the school board decided to include prayer" and "chose which member from the local religious community would give those prayers"). This Court has repeatedly held that state endorsement of prayer also causes unconstitutional entanglement with religion. *Mellen*, 327 F.3d at 375 (university's sponsorship of prayer failed "*Lemon's* third prong."); *Constancy*, 947 F.2d at 1151-52 (when "a judge prays in court, there is necessarily an excessive entanglement of the court with religion."); *Hall*, 630 F.2d at 1021 (prayer on a state map fostered unconstitutional entanglement). Several courts, including those within the Fourth Circuit, have specifically held that a public school's inclusion of prayer in a graduation ceremony fails the excessive entanglement prong. *See Deveney*, 231 F. Supp. 2d at 487; *Gearon*, 844 F. Supp. at 1102. *See also Skarin*,

204 F. Supp. 2d at 1198 (inclusion of prayer in graduation ceremony "fosters excessive entanglement"); *Sands*, 53 Cal. 3d at 879 (same).[26]

The Prayer Policy also creates "divisiveness along religious lines," which is a form of entanglement prohibited by the Establishment Clause. *Constancy*, 947 F.2d at 1151-52. *See Hall*, 630 F.2d at 1021-22 ("political divisiveness" is "inherent in any form of officially composed prayer"). The "potential for divisiveness is of particular relevance" in a "school environment where . . . subtle coercive pressures exist." *Lee*, 505 U.S. at 588.

Accordingly, the Prayer Policy fails the *Lemon* test in its entirety.

   C.  <u>The Prayer Policy fails the coercion test.</u>

The Supreme Court has made clear that "at a minimum, the [Establishment Clause] guarantees that government may not coerce anyone to support or participate in religion or its exercise." *Id.* at 587. In *Lee*, the Court held that a public school's inclusion of a nonsectarian prayer in a graduation ceremony was unconstitutionally coercive even though the event was technically voluntary and students were not required to participate in the prayer. *Id.* at 586. A school's "supervision and control of a . . . graduation ceremony places public pressure, as well as peer pressure" on students, the Court observed. *Id.* at 593. Students

---

[26] *Cf. Karen B.*, 653 F.2d at 902 (permitting student-initiated prayers in school failed entanglement prong); *Collins*, 644 F.2d at 762 (permitting students to deliver prayers in school assemblies failed entanglement prong); *Herdahl*, 933 F. Supp. at 597-98 (student-prayer during homeroom failed entanglement prong).

opposed to the prayer are placed "in the dilemma of participating . . . or protesting." *Id.* The Court concluded that a school "may not, consistent with the Establishment Clause, place primary and secondary school children in this position." *Id.* Notably, in *Santa Fe*, the Court held that student-initiated, student-led prayers at football games failed the coercion test as well. 530 U.S. at 310.

Since *Lee*, many courts, including those in the Fourth Circuit, have specifically held that student-led prayers at graduations fail the coercion test. *See Lassonde*, 320 F.3d at 983; *Cole*, 228 F.3d at 1104; *Santa Fe*, 168 F.3d at 818; *Black Horse*, 84 F.3d at 1480; *Harris*, 41 F.3d at 457; *Workman*, 2010 U.S. Dist. LEXIS 42813 at *16-17; *Gossage*, 2006 U.S. Dist. LEXIS 34613 at *20-21; *Deveney*, 231 F. Supp. 2d at 485-88; *Gearon*, 844 F. Supp. at 1099; *Wimberly*, 704 A.2d at 1202-03.

As in *Lee*, the "prayer exercises in this case" are "improper because the State has in every practical sense compelled attendance and participation in an explicit religious exercise." 505 U.S. at 598. Under *Lee*, unconstitutional coercion occurs when: "(1) the government directs (2) a formal religious exercise (3) in such a way as to oblige the participation of objectors." *Santa Fe*, 168 F.3d at 814. The first element is met because the prayers are "state-directed" in light of the "school district's supervision and control" of the event. *Lee*, 505 U.S. at 593. That they are

"student-led" is irrelevant. *Santa Fe*, 530 U.S. at 301-02. Second, the prayers constitute a formal "religious exercise" as in *Lee*. *Karen B.*, 653 F.2d at 901.

The final element is met because the prayers "oblige the participations of objectors." *Lee*, 505 U.S. at 593. The "graduation ceremony [is] a school-sponsored function that all graduating [students] could be expected to attend." *Lassonde*, 320 F.3d at 985. *See also Santa Fe*, 530 U.S. at 312 (even if "[a] student's decision to attend a home football game [is] purely voluntary, . . . the delivery of a pregame prayer has the improper effect of coercing those present to participate"); *Collins*, 644 F.2d at 762 (students "must either listen to a prayer chosen by a select group of students or forego the opportunity to attend a major school function. It is difficult to conceive how this choice would not coerce a student"). Ruling that a military institute's practice of delivering supper prayers to adult cadets failed the coercion test, this Court recognized that the "First Amendment prohibits [a school] from requiring religious objectors to alienate themselves from the [school] community in order to avoid a religious practice." *Mellen*, 327 F.3d at 372 n.9 (*citing Lee*, 505 U.S. at 596). That is precisely what the School District has done in this case, and will continue to do in the absence of injunctive relief.

D. <u>The new Prayer Policy is unconstitutional.</u>

There is no question that the original Prayer Policy, whereby school officials select speakers to deliver prayers and then review and approve the content of those prayers, is unconstitutional pursuant to Supreme Court precedents. *Santa Fe*, 530 U.S. at 315 ("[t]his case comes to us as the latest step in developing litigation brought as a challenge to institutional practices that unquestionably violated the Establishment Clause. One of those practices was the District's long-established tradition of sanctioning student-led prayer at varsity football games."); *Lee*, 505 U.S. at 587 ("[a] school official, the principal, decided that an invocation and a benediction should be given; this is a choice attributable to the State").[27] However, the Defendants claimed that the Plaintiffs are unlikely to succeed on the merits because they assert, in a conclusory fashion, they will no longer "sponsor" or "endorse" the prayers. (J.A.84n.2). They did not adopt a policy to this effect. They merely point to the principal's affidavit. (*Id.*, J.A.100¶17). Yet the School District "has not shown that it does not and will not permit prayer at school functions." *Steele v. Van Buren Public School Dist.*, 845 F.2d 1492, 1494-95 (8th

---

[27] Indeed, the Defendants concede as much by stating they have "revised" their policy to "*eliminate*" "school-sponsored or endorsed" prayers, thereby implying it was their original policy to do so. (J.A.100¶17). Additionally, the School District wrote to AHA: "the District is committed to not endorsing the use of such prayer by students, and therefore, any prayer given by a student at a school-sponsored event . . . will be under different circumstances than that of the May 20, 2013 program." (J.A.26).

Cir. 1988). In fact, it emphatically refused to adopt a policy prohibiting prayers at future graduations.[28] More importantly, the School District has not articulated how future prayers will not "endorse" religion.

Because "the district has not carried its heavy burden of showing that 'there is no reasonable expectation' that it will permit [schools to include] prayer in school" functions, the Plaintiffs' challenge to the *original* Prayer Policy "is not moot." *Id.* This is especially true in light of the well-settled doctrine that the voluntary cessation of an unconstitutional practice does not moot injunctive relief particularly where, as here, the government can simply revert back to its old ways. *United States v. W.T. Grant Co.,* 345 U.S. 629, 632-33 (1953). *See Jager*, 862 F.2d at 833-34 ("Under the imminent threat of the Jagers' lawsuit, the School District voluntarily ceased the practice of having pregame religious invocations delivered by Protestant ministers, and it implemented the equal access plan. However, the equal access plan was merely implemented by the school principals. It was not a formal policy. . . [Thus,] the controversy concerning the prior invocation practices is not moot."). *See also Steele*, 845 F.2d at 1494 ("The district's and [teacher's] disavowal of intent to resume prayers in band class is not sufficient to moot the case."); *Hall v. Board of School Comm'rs*, 656 F.2d 999, 1000 (5th Cir. 1981)

---

[28] In response to AHA's pre-litigation letter (J.A.11¶55, J.A.20-22), the School District wrote: "The District, however, will not create a policy that prohibits student-initiated and led prayers at future events." (J.A.11-12¶¶60-63, J.A.149¶¶60-63, J.A.26).

(school's voluntary cessation of morning devotionals upon learning that a lawsuit was going to be filed did not moot the plaintiff's challenge to the practice).[29]

Even if the School District adopted a formal policy codifying the statements in the principal's affidavit, prayers delivered at its graduations will continue to result in unconstitutional religious endorsement and coercion. Under this new "policy," the Defendants claim that at least at the 2014 graduation, "Students will be chosen based on academic and /or citizenship criteria to give messages of their own choosing without prior review, censorship, or editing by any teacher or administrator at the school." (J.A.100¶17).

But any prayers, especially sectarian prayers, delivered at a formal school-sponsored event for elementary students, during school hours in a Christian Chapel no less, will inevitably advance religion and be stamped with the "school's seal of approval." *Santa Fe*, 530 U.S. at 308. As the cases make clear, student prayers delivered at public school graduations are *governmental* speech, *supra* at II-A. The

---

[29] Jill Doe's graduation does not moot the Plaintiffs' equitable claims either. First, Jill Doe's parents have standing in their own right to seek injunctive relief because they have two younger children attending MVES including one in the fourth grade. (J.A.6-7¶10, J.A.170¶¶1-3). *See Schempp*, 374 U.S. at 224 (parents have standing to challenge school-sponsored religious activities that affect their children); *Moss*, 683 F.3d at 605; *Steele*, 845 F.2d at 1495; *Bell v. Little Axe Independent School Dist. No. 70*, 766 F.2d 1391, 1398 (10th Cir. 1985). Jill Doe's claim is not moot either because she attends a School District school and also because she plans on attending her younger siblings' graduations. (J.A.173¶1). *See Washegesic v. Bloomingdale Pub. Sch.*, 33 F.3d 679, 681 (6th Cir. 1994) ("[The graduated student] still visits the school and will confront the portrait [of Jesus] whenever he is in the hall . . . [Thus,] this case is not moot.").

42

school cannot "simply delegate the decision as to a prayer component of that ceremony to the graduating class without offending the Establishment Clause." *Gearon*, 844 F. Supp. at 1098-100 (policy permitting graduation "remarks [that are] student-initiated, student-written and student-delivered" held unconstitutional).

The new policy "permits a student to give a sectarian, proselytizing address. . . . [T]he administration could not halt it without violating its own policy. If this were to occur, a proselytizing prayer (perhaps even degrading other religions) would be delivered in a forum controlled by the School [District]." *Black Horse*, 84 F.3d at 1484-85. Such a policy is unconstitutional. *Id.* Putting "the ultimate choice to the students" does not eliminate school-sponsorship over the message. *Santa Fe*, 168 F.3d at 817. Prayers "that a school 'merely' permits will still be delivered to a government-organized audience . . . at a government-sponsored event," thereby violating the Establishment Clause. *Id.*

In *Gossage*, for instance, the court issued a TRO prohibiting a school district from allowing prayers at its graduations. 2006 U.S. Dist. LEXIS 34613 at *20-21. The school had a history of including student-delivered prayers in its ceremony, similar to MVES. *Id.* at *2-3. However, after a student filed suit, the school advised that it had changed its practice. *Id.* Under the new policy, the student body "decided by a majority vote that it wished to have a student representative give a

brief opening and/or closing message at the high school graduation. The students then elected a speaker." *Id.* The court concluded that the new policy, like the old one, was still "unconstitutional in light of *Santa Fe.*" *Id.* at *10-11, *13-14.

In addition to failing the effect prong, the clear purpose of the new policy is to continue to allow prayer at graduations, thus failing the purpose prong of *Lemon*. *See Santa Fe*, 530 U.S. at 315 ("The District, nevertheless, asks us to pretend that we do not recognize what every Santa Fe High School student understands clearly -- that this policy is about prayer . . . We refuse to turn a blind eye to the context in which this policy arose, and that context quells any doubt that this policy was implemented with the purpose of endorsing school prayer."); *Jager*, 862 F.2d at 829 ("[c]learly, the [post-litigation] equal access plan . . . was adopted with the actual purpose of endorsing and perpetuating religion" failing the purpose prong). Courts have concluded that similar litigation-inspired attempts to make graduation messages seem "hands off" fail the purpose prong. *See, e.g.*, *id*; *Gossage*, 2006 U.S. Dist. LEXIS 34613 at *19-20 ("[t]he change in policy was only implemented after this suit was filed. It appears to be nothing more than a poorly disguised attempt to ensure that prayer will continue to be a part of the graduation program.").

Finally, "[t]he new policy also does nothing to eliminate the fact that a minority of students are impermissibly coerced to participate in a religious

44

exercise." *Id.* at *20.[30] The Court held in *Santa Fe* that the "alleged 'circuit-breaker' mechanism of the dual elections and student speaker" did not "insulate the school from the coercive element of the final message." 530 U.S. at 310. *See also Black Horse*, 84 F.3d at 1487 ("the effect of the particular prayer that is offered in any given year will be to advance religion and coerce dissenting students."). To "subject a student at such an event to a display of religion that is offensive or not agreeable to his or her own religion or lack of religion is to constructively exclude that student from graduation . . . The Establishment Clause does not permit this." *Gearon*, 844 F. Supp. at 1099-100.[31]

In view of the above, it is plain that both the Defendants' original Prayer Policy and its new one violate the Establishment Clause.

---

[30] The Defendants appear to agree that the original Prayer Policy resulted in coercion. (J.A.84n.2).

[31] To support their claim that the new policy complies with the Constitution, the Defendants relied heavily on *Adler*, 250 F.3d 1330. However, *Adler* is at odds with *Santa Fe. See Gossage*, 2006 U.S. Dist. LEXIS 34613 at *20-21. Indeed, it is inconsistent with nearly every other case involving student-led graduation prayers, *supra*. Further, *Adler* is distinguishable for two key reasons. First, unlike in *Adler,* MVES will continue to select the speaker rather than by vote of the student body (J.A.100¶17). *See Corder*, 566 F.3d at 1229 n.5 ("*Adler* is distinguishable from the present case . . . [because the speaker here] was chosen by the school as a valedictorian based on her 4.0 grade point average."); *Workman*, 2010 U.S. Dist. LEXIS 42813 at *23-24 (distinguishing *Adler* because the school selected the student based on class rank). Second, unlike in *Adler*, MVES graduations are for elementary students. *Peck*, 155 F.3d at 282.

45

### III. HOLDING ELEMENTARY SCHOOL GRADUATIONS IN A CHRISTIAN CHAPEL WITHIN A BAPTIST UNIVERSITY VIOLATES THE ESTABLISHMENT CLAUSE.

The Defendants' policy of holding graduations in a sectarian venue adorned with Christian iconography is unconstitutional. *See Doe v. Elmbrook Sch. Dist.*, 687 F.3d 840, 851 (7th Cir. 2012) (en banc), *cert. pending*, No. 12-755 (2012) (school's practice of holding graduations in church violated Establishment Clause under *Lemon* and coercion test even though no prayers were delivered); *Enfield*, 716 F. Supp. 2d 172 (same); *Musgrove v. Sch. Bd.*, 608 F. Supp. 2d 1303, 1305 (M.D. Fla. 2005) (holding a graduation ceremony "in a religious institution . . . [is] contrary to Supreme Court precedent"); *Spacco v. Bridgewater Sch. Dep't*, 722 F. Supp. 834, 842 (D. Mass. 1989) (ruling that students could not attend classes in facilities owned by a church); *Lemke v. Black*, 376 F. Supp. 87, 89-90 (E.D. Wis. 1974) (enjoining school from holding graduation in church as some students could not attend without violating their consciences). Specifically, the Chapel Policy fails the coercion test and *Lemon* as discussed below.

> A. The Chapel Policy fails the coercion test.

Holding graduation ceremonies in a Christian church on the campus of a Baptist university unconstitutionally coerces students to enter a Christian environment. It is axiomatic that "[n]either a state nor the Federal Government . . . can force nor influence a person to go to . . . church." *Everson v. Bd. of Educ.*, 330

U.S. 1, 15 (1947). This "principle is violated when the government directs students to attend a pervasively Christian, proselytizing environment." *Elmbrook*, 687 F.3d at 855.

The Seventh Circuit recently ruled that holding high school graduations in a nondenominational church violated the Establishment Clause, reasoning that "*Lee* and *Santa Fe* cannot be meaningfully distinguished from the case at bar." *Id.* It "is cruel to force any individual to violate his conscience in order to participate in such an important event." *Lemke*, 376 F. Supp. at 89. In fact, some "believers see entering a church as a religious act in itself." *Enfield*, 716 F. Supp. 2d at 200.

The Chapel Policy therefore easily fails the coercion test pursuant to *Lee* and *Santa Fe.* Like the students in those cases, MVES students "cannot be said to have a real choice to absent themselves from their own graduations. Effectively then," the School District has required elementary students to attend a proselytizing Christian environment. *Id.* at 200. The Turner Chapel, like the churches in *Elmbrook* and *Enfield*, contains Christian iconography, including crosses and stained glass windows featuring Jesus Christ. (J.A.8¶¶26-29, J.A.148-49¶¶26-29, J.A.124, J.A.128-29, J.A.138, J.A.140). When "a student who holds minority (or no) religious beliefs observes classmates at a graduation event . . . meditating on its symbols (or posing for pictures in front of them)[,]" the "'law of imitation operates,' . . . and may create subtle pressure to honor the day in a similar manner."

*Elmbrook*, 687 F.3d at 855. The only way for "attendees to avoid the dynamic is to leave the ceremony. That is a choice, *Lee v. Weisman* teaches, the Establishment Clause does not force students to make." *Id.* at 855-56.

B. The Chapel Policy fails the *Lemon* test.

**1. The Chapel Policy lacks a secular purpose.**

The Chapel Policy lacks a secular purpose primarily because the choice to make "use of religious means to achieve secular goals where nonreligious means will suffice is forbidden." *Greater Houston Chapter of ACLU v. Eckels*, 589 F. Supp. 222, 234 (S.D. Tex. 1984), *cert. denied*, 474 U.S. 980 (1985) (*citing Larkin v. Grendel's Den*, 459 U.S. 116, 123-24 (1982)). *See also Hall*, 630 F.2d at 1020-21. In *Hall*, the state contended that a prayer printed on the North Carolina state map "promoted safety, which is a legitimate secular purpose." *Id*. While this Court accepted the argument that the "prayer may foster the state's legitimate concern for safety," the prayer failed the purpose prong because the state chose "a clearly religious means to promote its secular end." *Id.*

Because there are numerous viable secular venues for the ceremonies, including the School District's stadiums and gymnasiums (J.A.9¶¶31-36, J.A.148¶¶31-35), the Court may infer that the Defendants' objective in choosing the Turner Chapel was because of its religious nature.

**2.  The Chapel Policy unconstitutionally endorses religion.**

The Chapel Policy also has the plain effect of endorsing and affiliating the school with Christianity, thus violating *Lemon's* second prong. *Elmbrook*, 687 F.3d at 853 (holding that the "sheer religiosity of the space" "created a likelihood that high school students and their younger siblings would perceive a link between church and state" thereby unconstitutionally "convey[ing] a message of endorsement"). The "risk that children in particular will perceive the state as endorsing a set of religious beliefs is present . . . when government summons students to an offsite location for important ceremonial events." *Id.* at 856.

The "presence of religious iconography" in and around the Turner Chapel, which is located in the center of NGU, "is likely to prove particularly powerful, indicating to everyone that the religious message is favored and to nonadherents that they are outsiders." *Id.* at 853. A prominent Christian cross sits on top of the chapel (J.A.140), and on surrounding buildings. NGU's logo depicting the Christian cross and its slogan, "Christ Makes the Difference" (J.A.18), appears throughout the campus including at the entranceways to the chapel (J.A.131-32, J.A.138). Surrounding the entire interior of the chapel are eight large stained glass windows of overtly Christian religious scenes, each featuring Jesus Christ, including one of Jesus nailed to the cross. (J.A.8¶¶28-29, J.A.147-48¶¶28-29, J.A.124, J.A.128-29). At the center of the chapel is a podium bearing NGU's

religious logo and Christian cross (J.A.8¶27, J.A.147¶27, J.A.87, J.A.99¶11). Therefore, as in *Elmbrook*, the use of the chapel fails the second prong of *Lemon*.

Three additional facts make the endorsement even stronger in this case: (1) prayers are delivered at the MVES ceremony; (2) the children are in elementary school; and (3) the church is located within a pervasively Christian university, compounding the perception of Christian favoritism. The Supreme Court has made clear that the Establishment Clause prohibits "government affiliation with religious beliefs *or* institutions." *Allegheny*, 492 U.S. at 611 (emphasis added). In short, "[b]y choosing to hold graduations at [the chapel]," the School District "sends the message that it is closely linked" with the Turner Chapel *and* NGU "and its religious mission, that it favors the religious over the irreligious, and that it prefers Christians." *Enfield*, 716 F. Supp. 2d at 192.

Neither the convenience nor alleged quality of the Turner Chapel can save the Chapel Policy. The school in *Elmbrook* similarly claimed that it selected the church because its gymnasiums were crowded and overheated. 687 F.3d at 845 n.2, 855. However, the Constitution requires more of our public school graduations than that they provide a few comfortable luxuries.

The Defendants admit they can hold the ceremonies in "facilities on the campus of any of its public schools, including in a gymnasium, auditorium, cafeteria or football stadium." (J.A.9¶32, J.A.148¶32). There are 100 School

District schools. (J.A.147¶23). Although the Defendants deny "such venue would be as practical or functional as Turner Chapel," (J.A.148¶32), they fail to explain why that is so. Jennifer Gibson vaguely stated that Blue Ridge High School's gymnasium and stadium are unacceptable, asserting that using its facilities would "disrupt the BRHS school day and the available space is not comparable to the space at NGU." (J.A.100¶16). There is no need to hold the ceremony during a school day and it is unclear what she means by "comparable" space.[32] Further, the Defendants fail to explain why they cannot hold the ceremony on the campus of one of the many other schools within the School District.

As in *Elmbrook*, an "observer could reasonably conclude that the [School] District would only choose such a proselytizing environment aimed at spreading religious faith —despite . . . the existence of other suitable graduation sites—if the District approved of the Church's message." 687 F.3d at 854. Consequently, the Chapel policy fails the second prong of *Lemon*.

### 3.  The Chapel Policy causes excessive entanglement with religion.

Finally, the Chapel Policy fosters unconstitutional entanglement with religion by creating "political division along religious lines." *Hall*, 630 F.2d at

---

[32] In 2012, 142 graduating students participated in the ceremony. (J.A.114). The Turner Chapel seats 2,000 guests. (J.A.99¶a). Even if every student brought seven guests, only 1,136 seats would be necessary. Of course, since the event is held during the school day, it would be unlikely that each student would have seven guests attend.

1021. *See Mellen*, 327 F.3d at 375; *Constangy*, 947 F.2d at 1151-52. The School District has made religion relevant to a student's standing by requiring students to either attend a religious venue or forgo attendance altogether. Inevitably, this leads to religious divisiveness. *Lemke*, 376 F. Supp. at 90 (school's practice of holding public school graduation in church fostered unconstitutional entanglement, noting: "It is only natural that, under these circumstances, the religious dispute will eventually become politicized.").

In conclusion, the Chapel Policy is unconstitutional pursuant to both the coercion test and *Lemon*.

## IV.  THE DISTRICT COURT ERRED IN DENYING THE DOES' MOTION TO PROCEED ANONYMOUSLY.

A. <u>Standard of Review</u>

This Court reviews a District Court's ruling on a motion to proceed anonymously under the "abuse of discretion standard." *James v. Jacobson*, 6 F.3d 233, 239 (4th Cir. 1993). In exercising the required discretion, the District Court is to apply the following factors, the presence of even one of which is sufficient to grant the motion: (1) whether it will preserve privacy in a matter of sensitive and highly personal nature; (2) "whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;" (3) "the ages of the persons;" (4) "whether the action is against a

governmental or private party;" and (5) "the risk of unfairness to the opposing party." *Id.* at 238.

The District Court abused its discretion in failing to even consider, let alone apply, any of the above factors. (J.A.186-87). The "most obvious manifestation" of abuse of discretion "is in a failure or refusal, either express or implicit, actually to exercise discretion, deciding instead as if by general rule, or even arbitrarily, as if neither by rule nor discretion." *Id.* at 239. Another way is by failure "adequately to take into account judicially recognized factors." *Id.* Finally, discretion may be abused by "erroneous factual or legal premises." *Id.* In this case, the court abused its discretion in all three ways, but most evidently, the first and second.

At the commencement of the hearing, Plaintiffs' counsel informed the court that the Defendants did not oppose the motion. (J.A.186¶¶21-25). This notwithstanding, the court, without any discussion of the above factors, ruled: "Well, I am not going to grant it. And if they agreed to proceed in this court anonymously, they can go somewhere else." (J.A.187¶¶1-3). Such a "ruling, made without elaboration in the order, in fact almost announces itself as a flat rule of general application based upon strongly felt personal predilection," is clearly an abuse of discretion. *Id.* at 240. *See id.* at n.4 (noting that where judge declared "'if I try this case, there is not anybody [in] this courtroom testifying under a pseudonym'" amounted to a "flat rule" and was an abuse of discretion).

B. Each factor for filing anonymously weighs in the Does' favor.

Had the court below properly exercised its discretion, it would have had no choice but to grant the Does' motion as each factor weighs heavily in their favor. *See Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) (in granting mother and her two children's motion to proceed anonymously in Establishment Clause case, the court "emphasize[d] the special status and vulnerability of the child-litigants, the showing of possible threatened harm and serious social ostracization based upon militant religious attitudes, and the fundamental privateness of the religious beliefs.").

First, the nature of this suit compelled the Does to disclose private information about their minority religious beliefs. (J.A.5-6¶¶6-9). "[R]eligion is perhaps the quintessentially private matter." *Id.* at 186.

Second, this "suit - challenging a government activity - forces Plaintiffs to reveal their beliefs about a particularly sensitive topic that could subject them to considerable harassment" as well as physical and mental harm. *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (parents seeking to enjoin Bible teaching in public schools were allowed to proceed pseudonymously). *See Stegall*, 653 F.2d at 184-86 (anonymity warranted to protect plaintiffs against risk of violence from revelation of unpopular beliefs). In this case, "[t]he Does may expect extensive harassment and perhaps even violent reprisals if their identities are disclosed to a . .

. community hostile to the viewpoint reflected in plaintiffs' complaint." *Id.* at 186.

Jill Doe is especially likely to face harassment and bullying from other students if her name is released. So too will her younger siblings still in attendance at MVES.[33]

In light of the passions aroused by issues touching upon religion, courts routinely allow public school students and their parents to proceed anonymously in Establishment Clause cases. *See, e.g.*, *Santa Fe*, 530 U.S. at 294 ("The District Court permitted respondents (Does) to litigate anonymously to protect them from intimidation or harassment."); *Elmbrook*, 687 F.3d at 843; *Porter*, 370 F.3d 558; *Doe*, 274 F.3d 289 (anonymity permitted in parent and student's challenge to statute authorizing prayer in classrooms); *Duncanville I*, 994 F.2d at 166; *Stegall*, 653 F.2d at 186; *Enfield*, 716 F. Supp. 2d at 176 n.4 (plaintiffs permitted to proceed pseudonymously in challenge to school's practice of holding graduations in church); *Wilson Cty. Sch.*, 564 F. Supp. 2d at 771; *Gossage*, 2006 U.S. Dist. LEXIS 34613 at *2 (allowing parent to proceed anonymously in seeking to enjoin graduation prayers); *Doe v. S. Iron R-1 Sch. Dist.*, 453 F. Supp. 2d 1093 (E.D. Mo. 2006); *Yacovelli v. Moeser*, 2004 U.S. Dist. LEXIS 9152 (M.D.N.C. 2004) (university students permitted to proceed anonymously against university on

---

[33] Indeed, if the District Court's reaction to the Plaintiffs' claims is any indication, the Plaintiffs can surely expect great hostility from the public if their identities are revealed.

Establishment Clause claim); *Doe v. Barrow County*, 219 F.R.D. 189, 192 (N.D. Ga. 2003); *Doe v. Harlan County School Dist.*, 96 F. Supp. 2d 667 (E.D. Ky. 2000); *Aldine*, 563 F. Supp. 883.

The third factor also tips strongly in favor of granting the motion, as this case involves a child plaintiff, Jane Doe, and the privacy of her younger non-party siblings, which is an "especially persuasive" and "significant" factor in this analysis. *Stegall*, 653 F.2d at 186. *See also James*, 6 F.3d at 241 (parents could proceed anonymously to protect their minor children).

The fourth factor is clearly met because the Plaintiffs are suing the government to vindicate their constitutional rights. *Id.* at 238; *Stegall*, 653 F.2d at 185. Finally, allowing the Plaintiffs to proceed anonymously will not in any way prejudice the Defendants. In fact, the Defendants assented to the motion. (J.A.186¶¶21-25).

Accordingly, the court grossly abused its discretion in denying the Plaintiffs' motion because all of the factors strongly favor the Does.

## CONCLUSION

In view of the above, it is abundantly clear that the District Court erred in denying the Plaintiffs' motions for preliminary injunction and for proceeding anonymously. The Plaintiffs therefore respectfully request that the Orders of the District Court denying both motions be REVERSED and that this Court either

56

ISSUE the preliminary injunction and motion to proceed anonymously or REMAND to the District Court with instructions to grant both motions without delay.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 34(a), the Plaintiffs respectfully request that this Court grant them oral argument on the issues presented by this appeal.

Respectfully submitted:

January 27, 2014

_____
Aaron J. Kozloski, Fed. ID No. 9510
Capitol Counsel, LLC
P.O. Box 1996, Lexington, SC 29071
phone 803-748-1320 / facsimile 888-513-6021
aaron@capitolcounsel.us

_____
Monica Lynn Miller, CA 288343 / DC 101625
American Humanist Association
1777 T Street, N.W., Washington, D.C. 20009
phone (202) 238-9088 / facsimile (202) 238-9003
mmiller@americanhumanist.org

**Attorneys for Plaintiffs-Appellants**

57

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,897 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft® Word 12.2.8 in 14-point font size in Times New Roman.

January 27, 2014

Aaron J. Kozloski, Fed. ID No. 9510
Capitol Counsel, LLC
P.O. Box 1996, Lexington, SC 29071
*phone* 803-748-1320 / *facsimile* 888-513-6021
aaron@capitolcounsel.us

Monica Lynn Miller, CA 288343 / DC 101625
American Humanist Association
1777 T Street, N.W., Washington, D.C. 20009
*phone* (202) 238-9088 / *facsimile* (202) 238-9003
mmiller@americanhumanist.org

**Attorneys for Plaintiffs-Appellants**

## CERTIFICATE OF SERVICE

I certify that on January 27, 2014, the foregoing document was served on all

parties or their counsel of record through the CM/ECF system.


January 27, 2014

Aaron J. Kozloski
Capitol Counsel, LLC
P.O. Box 1996, Lexington, SC 29071
*phone* 803-748-1320 / *facsimile* 888-513-6021
aaron@capitolcounsel.us


Monica Miller
American Humanist Association
1777 T Street, N.W., Washington, D.C. 20009
*phone* (202) 238-9088 / *facsimile* (202) 238-9003
mmiller@americanhumanist.org

**Attorneys for Plaintiffs-Appellants**